**WARNER BROS., INC., et al., Plaintiffs,**

v.

**Richard E. O'KEEFE, Defendant.**

**CHAPPELL & CO., INC., et al., Plaintiffs,**

v.

**Richard E. O'KEEFE, Defendant.**

**BLENDINGWELL MUSIC INC. et al., Plaintiffs,**

v.

**Richard E. O'KEEFE, Defendant.**

**Civ. Nos. 76–378–2, 77–9–1 and 77–193–1.**

United States District Court, S. D. Iowa, C. D.

Dec. 22, 1977.

On Approval of Attorneys' Fees Jan. 27, 1978.

---

Robert G. Riley (Duncan, Jones, Riley & Finley), Des Moines, Iowa, for plaintiffs.

Herbert Rosenberg, Des Moines, Iowa, for defendant.

## ORDER

STUART, Chief Judge.

Magistrate Longstaff's Memorandum Opinion filed in the above-entitled action on December 22, 1977, is before the Court for review. The Court finds that said opinion was rendered after a full trial before the Magistrate with the consent of the parties under a stipulation executed October 18, 1977. The Court has examined said opinion for manifest error and has found none.

Therefore, the Court adopts the Magistrate's Memorandum Opinion as that of the Court and hereby authorizes and directs the Clerk of the Court to enter judgment pursuant thereto.

R. E. LONGSTAFF, U. S. Magistrate.

Plaintiffs in the above-entitled cases instituted these actions against the Defendant, Richard E. O'Keefe, claiming that he had violated their rights which had been properly obtained under the copyright law as set forth in Title 17 of the United States

Code. Jurisdiction of the matter exists in this Court pursuant to 28 U.S.C. § 1338(a). After all parties consented to trial before the Magistrate, trial was held on December 12, 1977.

### Findings of Fact

At all times pertinent to the present lawsuits, the Plaintiffs were proprietors of the copyright for the following musical compositions as indicated below:

| Plaintiff | Composition |
| --- | --- |
| Warner Brothers, Inc. | Alabama Jubilee |
| Robbins Music Corporation | That Lucky Old Sun (Just Rolls Around Heaven All Day) |
| Bourne Co. | San Antonio Rose |
| Chappell & Co., Inc. | Blueberry Hill |
| United Artists Music Co., Inc. | What Are You Doing The Rest of Your Life |
| Fourth Floor Music Inc. | Third Rate Romance |
| American Broadcasting Music, Inc. Blendingwell Music, Inc. | Bad Bad LeRoy Brown |
| Wishbone Music | Muskrat Love (Muskrat Candlelight) |
| Chappell & Co., Inc. and Pic Corporation | Whole Lot-ta Shakin' Goin' On |
| International Korwin Corp. | Chances Are |

Defendant is the sole stockholder and the only officer and employee of Richard E. O'Keefe Co., Inc., which was incorporated to operate an establishment known as R.E. O.'s, in a building located at 1820–30 East Army Post Road, Des Moines, Iowa. The building at that location is owned by the Defendant and leased to the corporation.

R.E.O.'s sells liquor beverages and is open to the general public. For the entertainment and amusement of its patrons, R.E. O.'s offers performances of musical compositions by various groups appearing on a stage located in the establishment. A jukebox is also located in the establishment and is played when the musical groups are not performing. An admission fee which fluctuates with the quality of the entertainment being offered is charged as patrons enter the establishment.

Various applications for liquor licenses and Sunday sales permits have been filed on behalf of the establishment known as R.E.O.'s. Some applications have been filed and licenses or permits issued to Richard E. O'Keefe Co., Inc., while others have been submitted by and issued to Richard E. O'Keefe. In a letter dated August 5, 1977, the Iowa Beer and Liquor Control Department acknowledged that the 1977 license was issued to Richard E. O'Keefe in error and therefore reissued the license to Richard E. O'Keefe Co., Inc..

Plaintiffs are members of the American Society of Composers, Authors and Publishers (ASCAP), to which they have granted the non-exclusive right to license non-dramatic public performances for profit of their musical compositions. ASCAP licenses many thousands of users of music throughout the United States to perform any of the compositions in its repertory.

On several occasions, ASCAP had informed Defendant of the necessity for obtaining a license from ASCAP or from the individual copyright owners in order lawfully to perform musical compositions owned by its members in R.E.O.'s. After Defendant failed to obtain such a license, ASCAP engaged individuals familiar with popular music to visit R.E.O.'s, and to submit a report listing the musical compositions performed during their visit to Defendant's establishment. Each visit lasted approximately 4 hours, starting at 9:00 p. m. and ending around 1:00 a. m. On four separate visits to R.E.O.'s, the individuals heard the following musical compositions on the indicated dates:

| July 22–23, 1976 | "Alabama Jubilee" "That Lucky Old Sun" "San Antonio Rose" |
| --- | --- |
| November 6–7, 1976 | "Blueberry Hill" "What Are You Doing The Rest of Your Life" "Third Rate Romance" |
| March 25–26, 1977 | "Bad, Bad LeRoy Brown" |
| May 8–9, 1977 | "Muskrat Love" "Whole Lot-ta Shakin' Goin' On" "Chances Are" |

The musical composition "Muskrat Love" was played on the jukebox. The other compositions were played or sung by performers from the stage located in Defendant's establishment.

While refusing to obtain a license from ASCAP, Defendant did instruct leaders of groups performing at R.E.O.'s to avoid playing ASCAP songs. Defendant also forwarded to ASCAP several lists of songs which musical groups planned to perform at R.E.O.'s and requested that he be informed of the songs for which ASCAP held a copyright. ASCAP responded to the inquiries within three to four weeks from their receipt. Defendant testified that by the time a response had been received, the songs had already been performed.

### Applicable Law

The owner of a copyright for a musical composition has the exclusive right to perform the work publicly for profit, pursuant to 17 U.S.C. § 1(e). "A performance will be 'for profit' if it occurs with an expectation by the person causing such performance of direct or indirect commercial advantage or gain to be derived therefrom." 1 Nimmers on Copyright, § 107.32. Title 17 U.S.C. § 1(e) further provides that a public performance of a musical composition on a coin-operated machine is not a "public performance for profit" unless there is an admission fee to the place wherein the musical composition is played.

If a copyright has been infringed, the owner of the copyright has a cause of action under 17 U.S.C. § 101 for injunctive relief and damages, as well as any other relief a court might deem necessary. Under Section 101(b), the copyright owner may claim actual damages or, in lieu of actual damages, statutory damages of not more than $5000 nor less than $250 for each infringement.

■ Under 17 U.S.C. § 116, the Court may award reasonable attorneys' fees to the prevailing party as part of the costs. The award of attorneys' fees is within the sound discretion of the Court. *Metro Associated Services, Inc., v. Webster City Graphic, Inc.,* 117 F.Supp. 224, 236 (N.D.Iowa 1953).

■ Defendant has argued that if there was an infringement it was committed by Richard E. O'Keefe Co., Inc., and not by Richard E. O'Keefe personally. Therefore, Defendant argues further that this Court does not have jurisdiction in the matter inasmuch as the only service of summons in the three cases was on Richard E. O'Keefe personally, and not as President of Richard E. O'Keefe Co., Inc. This argument is inappropriate where the facts demonstrate that officers of the corporation may be held personally liable along with the corporation:

> If a corporation commits an act of infringement, its individual officers and its parent corporation will be liable as related defendants if there is a substantial and continuing connection between them and the corporation with respect to the infringing acts. Thus an officer of an infringing corporation will be personally liable if he either participates personally (and other than merely in his corporate capacity) in the manufacture and sale of an infringing article, or if he uses the corporation as an instrument to carry out his wilful and deliberate infringements, or, perhaps, *if he is the dominant influence in the corporation, determining the policies which result in the infringement.* (Emphasis added)

2 Nimmers on Copyright, § 134.1. In *Famous Music Corp., et al., v. Bay State Harness Horse Racing and Breeding Association, Inc.,* 423 F.Supp. 341 (D.Mass.1976), the court set out the bases on which other courts had found a corporate officer liable as a joint tort-feasor in copyright infringement cases:

> (1) the officer personally participated in the actual infringement; or (2) the officer derived financial benefit from the infringing activities either as a major shareholder in the corporation, or through some other means such as receiving a percentage of the revenues from the activity giving rise to the infringement; or (3) the officer used the corporation as an instrument to carry out a deliberate infringement of copyright; or (4) the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement; or (5) on the basis of some combination of the above criteria. [cases omitted]

■ Specific instructions to the performers not to play ASCAP songs will not relieve a defendant of liability if in fact the songs were performed. In *KECA Music, Inc., v. Dingus McGee's Co.,* 432 F.Supp. 72, 74–75 (W.D.Mo.1977), a case strikingly similar to the case at bar, Judge Becker found the defendant liable as an infringer since it was in a position to supervise the activity and despite its directions to the musicians to avoid copyrighted songs:

Defendant asserts the defense that if plaintiffs' copyrighted musical compositions were performed by musical groups hired by it, the musical compositions were performed in direct contravention of specific directions from defendant to perform only original musical compositions. However, liability as an infringer requires only that the infringing party have the right and ability to supervise the infringing activity and also a direct financial interest in such activity. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159 (2nd Cir. 1971); *Shapiro, Bernstein & Co. v. H. L. Green Co.,* 316 F.2d 304 (2nd Cir. 1963). A person who has promoted or induced the infringing acts of a performer is jointly and severally liable as a "vicarious" infringer even though he has no actual knowledge that a copyright is being infringed by the performer. *Shapiro, Bernstein & Co. v. H. L. Green Co., supra; Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.,* 36 F.2d 354 (7th Cir. 1929). Further, the owner of an establishment who hires a performer who gives an unlicensed performance of a musical composition is liable as an infringer even if the performer acted in specific derogation of directions by the owner not to play copyrighted compositions. *Shapiro, Bernstein & Co. v. Veltin,* 47 F.Supp. 648 (W.D.La.1942). Therefore, even assuming the truth of defendant's allegation, the allegation does not present a defense.

### Conclusion

■ The admission charge at the door of Defendant's establishment and the sale of liquor beverages demonstrate the activity there was one for profit, both as to songs performed by musical groups from the stage and songs played on the jukebox. The establishment was open to the public. Evidence produced at trial shows the songs in question were performed despite the fact that Defendant had failed to obtain a license from ASCAP. Therefore, an infringement of Plaintiffs' copyrights did occur as to "Alabama Jubilee," "That Lucky Old Sun," "San Antonio Rose," "Blueberry Hill," "What Are You Doing The Rest of Your Life?," "Third Rate Romance," "Bad, Bad LeRoy Brown," "Whole Lot-ta Shakin' Goin' On," and "Chances Are," all performed from the stage by the musical groups, and "Muskrat Love," played on the jukebox.

■ Defendant is in a position to exercise supervision and control over performances at R.E.O.'s, and he expects a financial benefit from the entertainment made available there. Further, Defendant establishes the policies which have resulted in the infringement. Specific orders to the performers to avoid playing ASCAP songs will not avoid liability. And, Defendant's defense that Plaintiffs should be estopped for failure to supply him with lists of ASCAP songs so that such compositions could be avoided was based on no authority. The Court having found no authority for such an estoppel defense must hold the defense to be without merit. Therefore, Defendant is personally liable for the infringement as would be the corporation.

Having carefully considered the evidence and the applicable law,

IT IS ORDERED that the Clerk of the Court enter a judgment against the Defendant and in favor of the Plaintiff in the amount of $2,500.00, statutory damages (infringement of 10 songs with an award of the minimum statutory damages of $250 per infringement), plus their costs expended herein, and reasonable attorneys' fees.

IT IS FURTHER ORDERED that Plaintiffs be, and they are hereby, directed to file on or before January 16, 1978, an affidavit of time and expenses incurred by Plaintiffs' counsel as hereinabove provided.

## ORDER

WILLIAM C. STUART, Chief Judge.

After reviewing the Magistrate's awards of attorney fees and costs in the above-entitled actions, the Court finds that the awards are appropriate and hereby adopts the same.

## ORDER

### ON APPROVAL OF ATTORNEYS' FEES

R. E. LONGSTAFF, U. S. Magistrate.

■ These matters are now before the Court pertaining to the approval of attorney fees and costs requested by the plaintiffs pursuant to the Court's Order of December 22, 1977.

The Court has carefully reviewed the plaintiffs' bill of costs and the affidavit filed by plaintiffs' counsel in support of the request for attorney fees in the amount of $4,972.50. A resistance thereto was filed by the defendant on January 16, 1978 with plaintiffs' reply being filed January 24, 1978.

Having reviewed the affidavit of plaintiffs' counsel, the Court finds that the services of the plaintiffs' attorney are completely and adequately detailed in the affidavit. The Court also finds the rate charged by plaintiffs' counsel of $65 per hour to be reasonable under the circumstances. The only matter that concerns the Court is the fact that the claim for attorney fees is nearly double the amount of the award.

After giving due consideration to the nature of the lawsuits, the complexity of the issues, and the nature of the defense offered by the defendant in the above-entitled actions, the Court finds that the plaintiffs should be awarded attorney fees in the amount of $3,000 ($1,000 for each lawsuit). Additionally, the plaintiffs are hereby awarded their costs of $800.72.

IT IS ORDERED that the Clerk of Court supplement the Judgment previously entered herein to reflect the award of attorney fees and costs.