ACKEE MUSIC, INC., Bruce Springs-
teen, and Impulsive Music and
April Music, Inc., Plaintiffs,

v.

Jimmie D. WILLIAMS, Defendant.

Civ. A. No. 86–4082.

United States District Court,
D. Kansas.

Dec. 22, 1986.

Edward L. Bailey, Cosgrove, Webb & Oman, Topeka, Kan., for plaintiffs.

Jimmie D. Williams, pro se.

MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

The above-entitled matter comes before the court on the plaintiffs' renewed motion

for summary judgment. This is a copyright infringement action brought pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.* Plaintiffs seek statutory damages for the unauthorized performance of plaintiffs' copyrighted musical compositions at the defendant's establishment, Muff's, in Olathe, Kansas. Defendant has not responded to plaintiffs' requests for admissions, and as a result, the requests will be deemed admitted by the defendant. Fed.R.Civ.P. 36(a). Defendant has also failed to file a response to plaintiffs' motion for summary judgment or their statement of uncontroverted facts. Therefore, plaintiffs' uncontroverted facts are deemed admitted for the purpose of this motion. Rule 15(c), Rules of Practice of the United States District Court for the District of Kansas. The uncontroverted facts are as follows.

1. Since and prior to November 9, 1985, plaintiffs have been and still are proprietors of the copyrights in the following musical compositions: "Strut a/k/a Strutt," "Glory Days," "I'm Goin' Down" and "You May Be Right."

2. Defendant Jimmie D. Williams has no knowledge or information of any facts demonstrating or indicating that plaintiffs are not proprietors of valid copyrights in the musical compositions involved in this action.

3. On November 9, 1985, the musical composition, "You May Be Right," was publicly performed on defendant's premises.

4. On November 10, 1985, the following musical compositions were publicly performed on defendant's premises: "Strut a/k/a Strutt," "Glory Days" and "I'm Goin' Down."

5. None of the employees, agents or servants of the defendant have any personal knowledge refuting or controverting plaintiffs' affidavits which stated that each of these musical compositions were publicly performed on defendant's premises on November 9 and November 10, 1985.

6. On November 9 and 10, 1985, defendant, Jimmie D. Williams, did and still owns, controls, manages, operates and maintains a place of business for public entertainment, accommodation, amusement and refreshment known as Muff's, located at 832 South Harrison, Olathe, Kansas.

7. On November 9 and 10, 1985, defendant did not have permission from the plaintiffs or their agents to perform the musical compositions in question.

8. Each plaintiff is a member of the American Society of Composers, Authors and Publishers ("ASCAP"), to which they have granted a nonexclusive right to license nondramatic performances of their copyrighted musical compositions. In May 1983, the St. Louis District Office of the ASCAP began contacting the defendant in order to secure a license agreement which would allow the defendant to use of ASCAP's members' works. Since May 1983, the ASCAP repeatedly advised the defendant of liability under the United States copyright laws for infringing performances of ASCAP's members' copyrighted compositions. The defendant and his establishment remained unlicensed by the ASCAP. If the defendant would have obtained a license from the ASCAP, the defendant would owe the ASCAP approximately $2,123.48 in licensing fees as of October 9, 1986.

9. Plaintiffs have incurred attorney's fees in the amount of $1,187.50 in bringing and prosecuting this action.

### Conclusions of Law

The standards governing the consideration of motions for summary judgment are well established. To rule favorably on a motion for summary judgment, the court must first determine that the matters on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must look at the record in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). Pleadings and documentary evidence must be liberally

construed in favor of the party opposing the motion. *Thomas v. United States Department of Energy,* 719 F.2d 342, 344 (10th Cir.1983). The standard for granting summary judgment mirrors the standard for granting a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986).

█ Title 17, United States Code, § 106, grants the owner of a copyright to a musical work the exclusive right to perform or to authorize another to perform the work publicly. 17 U.S.C. § 106(4). Infringement of a copyright occurs when anyone violates the exclusive rights granted by section 106. *See* 17 U.S.C. § 501(a). It has been held that five elements must be shown to establish a prima facie case of infringement. The elements of a prima facie case are:

(1) the originality and authorship of the compositions involved;

(2) compliance with all formalities required to secure a copyright under Title 17, United States Code;

(3) that plaintiffs are the proprietors of the copyrights of the compositions involved in this action;

(4) that the compositions were performed publicly for profit [by the defendants]; and

(5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*See, e.g., Van Halen Music v. Palmer,* 626 F.Supp. 1163, 1165 (W.D.Ark.1986); *Broadcast Music, Inc. v. Fox Amusement Co.,* 551 F.Supp. 104, 107 (N.D.Ill.1982).

The defendant has not denied that the plaintiffs are the owners of valid copyrights in the musical compositions in question. Furthermore, the plaintiffs have provided sufficient information in their complaint to establish compliance with the formalities of Title 17. The defendant has also admitted that he did not obtain permission from the plaintiffs to perform the musical works in question.

The only defense raised by defendant is that Muff's is a private club under the laws of the state of Kansas and, therefore, the musical compositions were not "publicly" performed. As stated earlier, 17 U.S.C. § 106(4) gives the copyright owner the exclusive right to perform the work *publicly.* The term "publicly" is defined in the Copyright Act as follows:

(1) to perform or display [a copyrighted work] at any place open to the public or any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered.

17 U.S.C. § 101. The legislative history of the 1975 amendments to the Copyright Act discusses the scope of the definition of public performance.

Under clause (1) of the definition of "publicly" in section 101, a performance or display is "public" if it takes place "at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered." One of the principal purposes of the definition was to make clear that, contrary to the decision in *Metro-Goldwyn-Mayer Distributing Corp. v. Wyatt,* 21 C.O. Bull. 203 (D.Md.1932), performances in "semipublic" places such as clubs, lodges, factories, summer camps, and schools are "public performances" subject to copyright control. The term "a family" in this context would include an individual living alone, so that a gathering confined to the individual's social acquaintances would normally be regarded as private. Routine meetings of businesses and governmental personnel would be excluded because they do not represent the gathering of a "substantial number of persons."

H.R.Rep. No. 1476, 94th Cong.2d Sess. 64, *reprinted in* 1976 U.S.Code Cong. & Adm. News 5659, 5677–78.

█ It is clear to the court that the performance of copyrighted musical works at the defendant's establishment, Muff's, falls within the definition of public per-

formance found in 17 U.S.C. § 101. Although the establishment is classified as a private club under the laws of the state of Kansas, it is a "place where a substantial number of persons outside of a normal circle of a family and its social acquaintances" may gather. Regardless of the status of the establishment under local law, congressional intent controls the application of the substantive provisions of. the Copyright Act. *Lerner v. Schectman*, 228 F.Supp. 354, 357 (D.Minn.1964). Therefore, the court finds that the performance of copyrighted songs in a Kansas private club is a public performance as defined by federal copyright laws. An earlier decision in this district came to the same conclusion. *See Stygian Songs, et al. v. Patton*, 82–4128 (D.Kan., *unpublished*, Nov. 24, 1982).

■ The defendant also seems to argue that he should not be held liable when copyrighted musical compositions are performed by independent contractors. However, owners of entertainment establishments have long been held vicariously liable under federal copyright laws for infringements of a hired performer. "One who hires an orchestra for a public performance for profit is not relieved from a charge of infringement merely because he does not select the particular program to be played." *Buck v. Jewell-LaSalle Realty Co.*, 283 U.S. 191, 198, 51 S.Ct. 410, 412, 75 L.Ed. 971 (1931). Vicarious liability has even been found when the owner has specifically instructed the performers not. to play copyrighted songs. *See Warner Bros., Inc. v. O'Keefe*, 468 F.Supp. 16, 20 (S.D.Ia.1977); *KECA Music, Inc. v. Dingus McGee's Co.*, 432 F.Supp. 72, 74–75 (W.D. Mo.1977). Therefore, the fact that the defendant himself did not actually perform the copyrighted works does not relieve him of liability.

■ Section 502(a) of Title 17 gives the court authority to grant temporary and· final injunctions to prevent or restrain infringements of a copyright. An injunction against the defendants will issue when the substantial likelihood of further infringement of plaintiffs' copyrights exists. *Mi-*

*lene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1295 (D.R.I.1982). Since the defendant presently remains unlicensed by the ASCAP, the court finds a substantial likelihood of further infringement on the plaintiffs' copyrights. Therefore, the plaintiffs are entitled to a permanent injunction enjoining the defendant from allowing public performances in his establishment of the copyrighted works involved in this action, namely "Strut a/k/a Strutt," "Glory Days," "I'm Goin' Down" and "You May Be Right."

■ Furthermore, the plaintiffs seek statutory damages in ·lieu of actual damages as provided by 17 U.S.C. § 504(a). Under section 504(c), the court is authorized to penalize the defendant for copyright infringement by awarding plaintiffs $250.00 to $10,000.00 for each infringement. 17 U.S.C. §§ 504, 505. In interpreting section 504(c), courts have held that in the absence of proof, the statute invests the trial court with wide discretion to set damages within the statutory limits. *See, e.g., Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1, 3 (1st Cir. 1983). The United States Supreme Court has held that one of the principles underlying the Copyright Act·is the deterrence and discouragement of wrongful conduct. The Court held:

> [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but ·also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for an uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy.

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222,

225, 97 L.Ed. 276 (1952). It has also been held that a copyright infringer "cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law." *Iowa State University Research Foundation, Inc. v. ABC, Inc.,* 475 F.Supp. 78, 83 (S.D.N.Y.1979). The court notes that the ASCAP has been in touch with the defendant since May 1984 in efforts to advise the defendant of his liability under federal copyright laws and to secure licensing to prevent such infringements. Furthermore, the plaintiffs have presented evidence that as of October 9, 1986, the defendant would owe ASCAP licensing fees totaling $2,123.48 had he been properly licensed during this time. Furthermore, the defendant has failed to present any evidence to this court of any good faith attempt to determine his responsibilities and liabilities under the federal copyright laws after being contacted by ASCAP. Therefore, the court finds that the plaintiffs are entitled to statutory damages of $750.00 for each of the four infringements, totaling statutory damages of $3,000.00.

The Copyright Act also provides that the court, in its discretion, may award attorney's fees and costs. 17 U.S.C. § 505. Therefore, the court awards plaintiffs attorney's fees in the amount of $1,187.50, together with serving and filing costs of $80.00.

IT IS THEREFORE ORDERED that defendant is hereby enjoined from performing or allowing the performance of the copyrighted musical compositions specified in this order until such time as the defendant has received proper authorization for such performance from the plaintiffs or their agents.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is granted and judgment is hereby entered in plaintiffs' favor in the amount of $3,000.00.

IT IS FURTHER ORDERED that judgment is entered in favor of the plaintiffs for attorney's fees and costs totaling $1,267.50.