JOBETE MUSIC CO., INC.; David E. Lewis; Wayne I. Lewis; Jonathan Lewis d/b/a Jodaway Music; Science Lab Music Productions Ltd.; Flyte Tyme Tunes; Brockman Music; Poopy's Music; and Controversy Music, Plaintiffs,

v.

MEDIA BROADCASTING CORPORATION, Evans Broadcasting Corporation, and Mutter D. Evans, Defendants.

Civ. No. C–87–778–WS.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Dec. 1, 1988.

Michael E. Weddington, Raleigh, N.C., for plaintiffs.

Michael R. Greeson, Jr., Winston–Salem, N.C., for defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court upon the motion of Plaintiffs Jobete Music Company, Inc., *et al.* (Jobete) for summary judgment against Defendants Evans Broadcasting Corporation and Mutter D. Evans on eight counts of alleged copyright infringement.[1] As their remedies, Plaintiffs seek injunctive relief, damages of $3,000.00 per infringement, and costs, including a reasonable attorney's fee.

In response to Plaintiffs' motion, Defendants Evans Broadcasting and Mutter Evans have filed their own motion for summary judgment, contending that neither party may be held liable for copyright infringement even if such infringement occurred.

Based upon the pleadings, affidavits, briefs, and other documents filed with this court, Plaintiffs' motion for summary judgment will be granted and Defendants' cross-motion shall be denied.

## STATEMENT OF FACTS

Plaintiffs are songwriters and music publishers who belong to the American Society of Composers, Authors and Publishers (AS-CAP), which has a nonexclusive right from its members to license nondramatic public performances of their copyrighted musical

---

1. Defendant Media Broadcasting Corporation is in bankruptcy and Plaintiffs have not sought to lift the automatic stay as to that defendant.

compositions. On behalf of its more than 38,000 members, ASCAP licenses thousands of radio and television stations, restaurants, nightclubs, concert halls, and other establishments whose owners desire to perform copyrighted musical compositions in the ASCAP repertoire.

Defendant Mutter D. Evans is the president and sole shareholder of Defendant Evans Broadcasting Corporation, which is a holding company established to purchase radio properties. Evans Broadcasting is the sole shareholder of Media Broadcasting Corporation, which operates radio station WAAA in Winston–Salem, North Carolina. Mutter Evans is WAAA's president, owner, and general manager, and has primary responsibility for the station's control, management, operation, and maintenance of affairs by her own admission. (Defendants' Response to Plaintiffs' First Request for Admissions ¶ 38).

Mutter Evans acquired her interest in WAAA in November of 1979. For various periods until January 31, 1987, Defendants had license agreements with ASCAP which authorized the station to play any of the copyrighted musical compositions in the ASCAP repertoire. In return for such licenses, Defendants agreed to pay license fees to ASCAP. However, Defendants frequently failed to pay license fees when due, resulting in ASCAP's termination of Defendants' license on four separate occasions during the past four years. Three of those times licenses were renewed after Defendants. took steps to cure their delinquencies. However, a failure to rectify the payment situation resulted in another termination on January 31, 1987.

Despite the lack of a license with AS-CAP, WAAA broadcast eight songs in the repertoire of ASCAP on April 1 and 2, 1987. (Affidavits of Benny Allen and Kenneth Ayden). While Mutter Evans has denied any knowledge of the alleged infringement, she admits that if the songs were performed as alleged by Plaintiffs they were performed at a time when the station's license had been terminated. (Deposition of Mutter D. Evans, p. 24). In addition, Mutter Evans has also admitted that

Defendants have continued to broadcast copyrighted music without permission of the copyright owners. (Defendants' Response to Plaintiffs' First Request for Admission ¶ 34).

On May 11, 1987, ASCAP offered to reinstate WAAA's license if it would pay past-due ASCAP license fees and submit licensee reports. However, Defendants refused this offer. Thereafter, on November 4, 1987, Plaintiffs filed the present action.

## DISCUSSION

In a motion for summary judgment under Fed.R.Civ.P. 56, the moving party has the burden to demonstrate the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Magill v. Gulf & Western Indus., Inc.*, 736 F.2d 976, 979 (4th Cir.1984). In ruling on the motion, the court should assess all inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). To demonstrate the lack of material issues, the moving party need not negate the elements of the opposing party's claim, but the non-moving party's lack of evidence must be pointed out. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party is successful in demonstrating the absence of material issues, then the non-moving party is required to move beyond his or her pleadings and come forward with evidence raising a material issue. Fed.R. Civ.P. 56(e); *Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

■ Keeping these principles in mind, the court must first determine whether any copyright infringement actually occurred in this case. In their brief in response to Plaintiffs' motion and in support of their own motion, Defendants do not seriously contest the infringement, but instead concentrate on the subsequent issues of whether either Mutter Evans or the Evans Broadcasting Corporation may be held liable for such alleged infringement. However, in their answers to Plaintiffs' com-

plaint and request for admissions, Defendants have denied such infringement occurred. Therefore, the court will consider whether Plaintiffs have established a claim of copyright infringement and, if so, whether Defendants have come forward with sufficient evidence to avoid a motion for summary judgment.

Plaintiffs correctly point out that in order to maintain their claim they must establish the following elements with respect to the compositions in suit: (1) originality and authorship; (2) compliance with the formalities of the Copyright Act, 17 U.S.C. §§ 101–914; (3) Plaintiffs' ownership of the copyrights involved; (4) public performance for profit; and (5) lack of authorization. *See Ackee Music, Inc. v. Williams,* 650 F.Supp. 653, 655 (D.Kan.1986); *Van Halen Music v. Palmer,* 626 F.Supp. 1163, 1165 (W.D.Ark.1986); *Fourth Floor Music, Inc. v. Der Place, Inc.,* 572 F.Supp. 41, 43 (D.Neb.1983); *Shapiro, Bernstein & Co. v. "The Log Cabin Club Ass'n",* 365 F.Supp. 325, 328 n. 4 (N.D.W.Va.1973). With regard to the first three elements, Plaintiffs have submitted copies of the registration certificates for the eight songs involved in this case. Under 17 U.S.C. § 410(c), these documents constitute *prima facie* evidence of the elements of originality and authorship, compliance with the formalities of the Copyright Act, and Plaintiffs' ownership of the copyrights involved in the absence of any contradictory evidence. *See Sailor Music v. Mai Kai of Concord, Inc.,* 640 F.Supp. 629, 632 (D.N.H.1986); *Blendingwell Music, Inc. v. Moor–Law, Inc.,* 612 F.Supp. 474, 479–80 (D.Del.1985). As Defendants have not submitted any evidence to contradict the copyright registration certificates submitted by Plaintiffs, the first three elements of copyright infringement are thus established.

Concerning the fourth element, public performance for profit, Defendants have been unable to move beyond a bare assertion that the songs in question were not played by the station on the dates alleged by Plaintiffs. Construing the facts in the light most favorable to Defendants, the court finds that at best Defendants have established only that they have no documents regarding what songs are played on what dates and that they can neither confirm nor deny that the songs in question were played after their license was revoked. As such, Defendants have failed to come forward with sufficient evidence to raise a genuine issue of material fact in the face of the affidavits of Benny Allen and Kenneth Ayden, both of whom have stated that on the dates in question songs from ASCAP's repertoire were played on WAAA. As such, element four is also established.

Finally, with regard to the fifth element of copyright infringement, Mutter Evans admitted in her deposition that if Plaintiffs' allegations were true the station had no authorization to play the songs involved on the dates in question. Since the undisputed facts establish that the songs were indeed played on the dates in question and it is clear that there was no authorization for such broadcast, the elements of copyright infringement have been established as a matter of law.

■■■ Defendants contend, however, that notwithstanding any copyright infringement, neither Mutter Evans nor Evans Broadcasting Corporation may be held liable because under the doctrine of *respondeat superior* any liability would belong to Media Broadcasting. However, in a copyright infringement action of this type, the doctrine of *respondeat superior* is inapplicable. *See Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963) (while normal agency rule of *respondeat superior* applies to servant acting within the scope of his employment, where an individual has the right and ability to supervise the infringing conduct and a financial interest in exploitation copyright law is best effected by imposing liability on the one benefiting from the infringement); *Hideout Records & Distribs. v. El Jay Dee, Inc.,* 601 F.Supp. 1048, 1052 (D.Del. 1984) (court rejected use of statute shielding corporate officers, directors, and shareholders from liability for debts as a shield against copyright infringement liability). Instead, liability for copyright infringement may be imposed upon an officer, director or

shareholder so long as the individual "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971); *accord Blendingwell Music, Inc. v. Moor–Law, Inc.*, 612 F.Supp. 474, 482 (D.Del.1985); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 913 (D.Conn. 1980). If this test is met, it is irrelevant whether the individual participated in the infringing activity. *See Shapiro*, 316 F.2d at 307; *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F.Supp. 531 (S.D.N.Y.1977), *aff'd*, 592 F.2d 651 (2d Cir. 1978).

Here, Ms. Evans contends that she was unaware of any infringing activity undertaken by WAAA. However, even if this is the case, it is clear that Ms. Evans had both the right and the ability to supervise the activities of the station and also had a direct financial interest in the station's operations. By her own admission Ms. Evans has primary responsibility for the control, management, operation, and maintenance of the affairs of WAAA, and, as president, general manager, and owner of the station, her financial interest in the station's operations is obvious. Thus, Ms. Evans may be held jointly and severally liable for the infringing activity.

With regard to Evans Broadcasting, cases have also determined that shareholders may be held jointly and severally liable for copyright infringement under the right and ability/interest test. *See, e.g., Blendingwell*, 612 F.Supp. at 482 (sole shareholder held liable for infringing activity); *Rodgers v. Quests, Inc.*, 213 U.S.P.Q. 212 (N.D. Ohio 1981) (61% shareholder in holding company with stock in a corporation which owned radio station was jointly liable for the station's copyright infringement). While these cases lend further support for Ms. Evans' liability as a stockholder as well as an officer, the court has been unable to locate cases where the right and ability/financial interest test was used to impose liability on a shareholder corporation as opposed to an individual. However, even if it were necessary to pierce the corporate veil to reach Evans Broadcasting in this case, liability could still be imposed on the holding company, for under North Carolina law, " '[A] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.' " *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985) (quoting *B–W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 S.E.2d 570, 575 [1966] ). Here, Ms. Evans has admitted through her deposition testimony that Evans and Media Broadcasting are "technically ... one and the same" and she is president of both corporations. In addition, Evans Broadcasting holds all the stock of Media Broadcasting and Ms. Evans is Evans Broadcasting's sole shareholder. As such, it is clear that Evans Broadcasting and Ms. Evans exercise actual control over Media Broadcasting and operate it as a mere instrumentality or tool.[2] Thus, whether one applies the right and ability/interest test or the piercing of the corporate veil test with regard to Evans Broadcasting, Evans Broadcasting is jointly and severally liable along with Ms. Evans for the torts of radio station WAAA and Media Broadcasting. Therefore, Plaintiffs' motion for summary judgment on the

---

**2.** Although the *Glenn* court noted several factors, including adequacy of capitalization and adherence to corporate formalities, which have been considered in cases determining the propriety of piercing the corporate veil but which are not in evidence before this court, the *Glenn* decision continued,

It is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which, when taken together with an element of injustice or abuse

of corporate privilege, suggests that the corporate entity attacked had 'no separate mind, will or existence of its own' and was therefore the 'mere instrumentality or tool' of the dominant corporation.

313 N.C. at 458, 329 S.E.2d at 332. Here, the court finds Ms. Evans' admission and the structure of the station and the holding company sufficient to establish that Media Broadcasting functioned as a tool of Evans Broadcasting with no identity of its own.

copyright infringement claim against Ms. Evans and Evans Broadcasting will be granted and Defendants' cross-claim shall be denied.

■ As relief for the infringement, Plaintiffs have requested a permanent injunction prohibiting Ms. Evans and Evans Broadcasting from infringing upon Plaintiffs' copyrights to the musical compositions in question, damages of $3,000.00 per infringement, and costs including a reasonable attorney's fee. With regard to injunctive relief, 17 U.S.C. § 502(a) provides that "any court having jurisdiction of a civil action arising under this Title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Using this section, various courts have held that when infringement occurs the copyright owner is entitled to an injunction provided that there is "a substantial likelihood of further infringement." *Milene Music v. Gotauco*, 551 F.Supp. 1288, 1295 (D.R.I.1982).

Here, the fact that WAAA continues to be unlicensed and that Defendants have admitted that they continue to perform publicly copyrighted music without permission of the copyright owners or their authorized agents indeed poses a substantial likelihood of further infringement by the station. *See, e.g., Broadcast Music, Inc. v. Allis,* 667 F.Supp. 356 (S.D.Miss.1986) (injunction appropriate where infringer had no license, had made no acknowledgment of the wrongfulness of his acts, and had made no showing that no further violation would occur); *Ackee Music, Inc. v. Williams,* 650 F.Supp. 653 (D.Kan.1986) (remaining unlicensed constitutes substantial risk of continued infringement); *Milene,* 551 F.Supp. at 1295 (injunction granted even where bar was currently licensed because from time to time it had ignored both ASCAP and the proprietary rights of the copyright holders). Consequently, Plaintiffs' request for injunctive relief will be granted.

■ In addition to providing injunctive relief, the Copyright Act also permits Plaintiffs to elect to recover damages. Where, as in this case, there is no proof of actual damages or lost profits, 17 U.S.C. § 504(c)(1) allows for statutory damages between $250.00 and $10,000.00 per count to be awarded in the court's discretion. If the infringement is willful the court may increase the award of statutory damages to $50,000.00 per count.

In considering requests for an award of statutory damages, courts consider three factors: first, the expenses saved and the profits reaped by the infringers; second, the revenues lost by the person holding the copyright; and third, the infringer's willfulness or lack thereof. *Nick-O-Val Music Co. v. P.O.S. Radio, Inc.,* 656 F.Supp. 826, 829 (M.D.Fla.1987). Here, Plaintiffs have alleged and Defendants have not disputed that Defendants have saved in the neighborhood of $15,000.00 by not being licensed by ASCAP. Based upon this savings along with the alleged willful conduct of the Defendants, Plaintiffs argue that they should be entitled to an award of $3,000.00 per infringement for a total of $24,000.00 in damages.

The court agrees with Plaintiffs that based upon Defendants' continual difficulties in paying ASCAP license fees on time, the fact that ASCAP warned the station in correspondence dated February 13, 1987, that its license had been revoked and that any subsequent performance of ASCAP repertoire material would constitute infringement of copyright, and Defendants' refusal to resolve the copyright infringement without litigation by accepting ASCAP's offer to extend a license in May of 1987, Defendants' conduct may be characterized as willful. *See Nick–O–Val,* 656 F.Supp. at 829 (where defendants knew of their license fee delinquencies and knew or should have known that ASCAP licenses had been revoked and that they faced potential liability, broadcast of copyrighted musical compositions without proper licensing or other valid permission was willful). However, even where willful conduct has been found, none of the cases presented by Plaintiffs have awarded more than $2,500.00 per infringement, and some cases have awarded substantially less under sim-

ilar circumstances. *See, e.g., Broadcast Music, Inc. v. Allis,* 667 F.Supp. 356 (S.D. Miss.1986) (only $250.00 awarded per infringement where there was no showing of either profit or loss); *Ackee Music, Inc. v. Williams,* 650 F.Supp. 653 (D.Kan.1986) ($750.00 per infringement or total of $3,000.00 was awarded where ASCAP had contacted defendant concerning infringement, license fees would have been $2,123.00, and there was no good faith attempt by defendant to limit liability); *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908 (D.Conn.1980) (award of $1,000.00 per infringement granted under circumstances similar to those in case at bar).

One factor that emerges consistently from these cases, however, is that the award of statutory damages has always exceeded the amount of fees Defendants would have incurred had they been licensed. Given the $15,000.00 figure plus Defendants' conduct both prior and subsequent to the 1987 license revocation, but mindful of the fact that injunctive relief has been granted and that no decisions relied upon by Plaintiffs support a damage award of $3,000.00 per infringement, the court finds that an award of $2,500.00 per infringement for a total of $20,000.00 should be sufficient to serve as a deterrent to Defendants' future infringing conduct.

Finally, Plaintiffs request their costs including a reasonable attorney's fee expended in bringing their claim. In the absence of mitigating factors courts routinely grant both costs and attorney's fees in successful infringement cases pursuant to 17 U.S.C. § 505. *See, e.g., Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288 (D.R. I.1982) (costs and fees awarded where infringement was deliberate, there was no justification for infringement, and a license was refused); *Blendingwell Music, Inc. v. Moor–Law, Inc.,* 612 F.Supp. 474, 486 (D.Del.1985) (fees and costs granted under circumstances similar to those in *Milene* and the case at bar). Here, Plaintiffs' attorney has submitted an affidavit revealing costs and fees totaling $2,432.47 and Defendants have submitted no evidence disputing this fee nor any evidence possibly mitigating against an award of attorney's fees and costs. Finding Plaintiffs' costs and fees to be reasonable, the court determines that Plaintiffs are entitled to an award in the amount of $2,432.47.

An order and judgment in accordance with this opinion shall be entered contemporaneously herewith.

## ORDER AND JUDGMENT

In accordance with the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motion for summary judgment is DENIED;

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiffs' motion for summary judgment be, and the same hereby is, GRANTED;

IT IS FURTHER ORDERED that Defendants, their agents, employees, and assigns are hereby PERMANENTLY ENJOINED from any further infringement on any copyrighted material to which Plaintiffs hold a right to grant licenses;

IT IS FURTHER ORDERED that Plaintiffs are entitled to an award of damages in the amount of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500.00) per infringement or a total of TWENTY THOUSAND DOLLARS ($20,000.00) from Defendants; and

IT IS FURTHER ORDERED that Plaintiffs be awarded their costs and attorney's fees in this action of TWO THOUSAND FOUR HUNDRED THIRTY–TWO and 47/100's DOLLARS ($2,432.47).