**PEDROSILLO MUSIC, INC. et al., Plaintiffs,**

v.

**RADIO MUSICAL, INC. and Thomas Carrasquillo, Defendants.**

Civ. No. 91–2331 HL.

United States District Court, D. Puerto Rico.

Feb. 24, 1993.

Diego A. Ramos–Cayon, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for plaintiffs.

Nydia Maria Diaz–Buxo, Caguas, PR, for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

This is a suit for willful copyright infringement under Title 17 U.S.C. Jurisdiction of this Court is based upon Title 28 U.S.C., Section 1338(a). Plaintiffs, Pedrosillo Music, Inc., Unimusica, Inc., Trina Jill Music Corp., Poemas y Canciones, Inc. and Telearte Florida, Inc. are the owners of copyrights over seven (7) musical compositions. They allege seven causes of action for copyright infringement based on the defendants' unauthorized public performances of their copyrighted musical compositions. Plaintiffs are also members of the American Society of Composers, Authors and Publishers ("ASCAP"), an unincorporated association to whom they have granted the nonexclusive right to license non-dramatic public performances of their copyrighted musical compositions. On behalf of its more than 50,000 members, ASCAP licenses thousands of radio and television stations, restaurants, nightclubs, concert halls, and other establishments whose owners desire to perform copyrighted musical compositions in the ASCAP repertoire.

Defendant Radio Musical, Inc. ("Radio Musical") is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico which operates a commercial radio station in Cidra, Puerto Rico, known by the call-letters WBRQ–FM. Defendant Radio Musical has owned and operated WBRQ–FM since 1977 when the station went on the air. Defendant Thomas Carrasquillo ("Carrasquillo"), a resident of Puerto Rico, was the Vice President, a 25 percent stockholder, and General Manager of the station when it first opened. For the last five years, he has been President of the station. By his own admission, Carrasquillo exercises primary responsibility for the control, management, operation and maintenance of the affairs of Radio Musical. (Defendants' Response to Plaintiffs' Request for Admissions ¶ 4.)

From November 29, 1988 through the present, WBRQ–FM has not been licensed to perform copyrighted musical works in the ASCAP repertory including the works owned by plaintiffs and allegedly infringed by defendants on February 6, 1991. The history of copyright litigation involving Radio Musical dates back to 1979, when ASCAP filed the first of four lawsuits designed to bring Radio Musical into compliance with their licensing procedures. That lawsuit, *Jobete Music, et al. v. Radio Musical, Inc.*, Civ. No. 79–240 was settled by means of a Stipulation of Settlement which provided for the execution of a license agreement and a lump sum payment. Radio Musical's license payments soon fell into arrears, resulting in the termination of their license and the filing of a second suit on behalf of ASCAP members whose copyrights had been infringed, *Unimusica, Inc. v. Radio Musical, Inc. and Thomas Carrasquillo*, Civ. No. 84–2239 (HL). That case settled by means of a Confession of Judgment providing, once again, for execution of a license agreement for the future and a lump sum payment. For a second time, Mr. Carrasquillo and Radio Musical quickly fell behind in the payment of current license fees. In November, 1988, when the station's account was some $3,000 in arrears, ASCAP terminated the WBRQ–FM's license. When extrajudicial efforts to settle the matter proved unsuccessful, a third lawsuit was brought, *Rahmat Music, et al. v. Radio Musical, Inc. and Thomas Carrasquillo*, Civ. No. 91–1131 (CC). On August 28, 1991, defendants made an Offer of Judgment in the amount of $67,500 which plaintiffs promptly accepted. Judgment for the plaintiffs was entered by Judge Cerezo, but, to date, it appears that defendants have made no payments towards satisfaction of the judgment. When further negotiations to settle the infringement claims without litigation collapsed, plaintiffs filed this action.

Before the Court is plaintiffs' Motion for Summary Judgment. Plaintiffs seek either a single monetary statutory damages award of $100,000 on one of the seven causes of action, or a statutory damage award of $15,000 per infringement for a total award of $105,000. They also seek an injunction permanently barring defendants from publicly performing songs in the ASCAP repertory unless duly authorized to do so, costs and attorney's fees.

## STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material

fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material, if under applicable substantive law, it may affect the result of the case and a dispute is genuine only if there is conflicting evidence that requires a trial to resolve the discrepancy. *Ortega–Rosario v. Alvarado–Ortiz,* 917 F.2d 71, 73 (1st Cir.1990). Once the movant has presented probative evidence establishing its entitlement to judgment, the party opposing the motion must set forth specific facts demonstrating that there is a material and genuine issue for trial. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether summary judgment is warranted, the court views the facts alleged in the light most favorable to the non-moving party and must indulge all inferences in favor of that party. *Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir.1989).

▇ Plaintiffs correctly note that in order to maintain their claim they must establish the following elements with respect to the compositions in suit: (1) originality and authorship; (2) compliance with the formalities of the Copyright Act, 17 U.S.C. §§ 101–914; (3) Plaintiff's ownership of the copyrights involved; (4) public performance of the compositions; and (5) lack of authorization. *Almo Music Corp. v. 77 East Adams, Inc.,* 647 F.Supp. 123 (N.D.Ill.1986). There is some dispute as to whether plaintiffs must also show that the defendants' public performance was done for profit. *Almo Music,* 647 F.Supp. at 124. Relying on the court's analysis in *LaSalle Music Publishers, Inc. v. Highfill,* 622 F.Supp. 168, 168–69 (D.Mo. 1985), the court in *Almo Music* found that Congress had expressed a desire to "protect the [copyright] holder against widespread nonprofit performances of the copyrighted work." *Id.,* 647 F.Supp. at 125. Accordingly, the court held that plaintiffs did not have to allege performance for profit in order to

survive a motion to dismiss. Similarly, in addressing the public performance requirement of a copyright infringement action, the court in *Jobete Music Co., Inc. v. Media Broadcasting Corp.,* 713 F.Supp. 174, 177 (M.D.N.C.1988), did not explicitly inquire into whether there had been a showing of profit resulting from the unauthorized radio performance of plaintiffs' compositions. On the strength of the reasoning set forth in *LaSalle* and *Almo Music,* the Court finds that no showing of profit stemming from an alleged unauthorized performance is necessary to make out a cause of action for copyright infringement.

▇ Finally, concerning the liability of Carrasquillo, under the Copyright Act of 1976, 17 U.S.C. §§ 101–914, an individual who is the dominant influence in a corporation and has the capacity to control the acts of the corporation may be held jointly liable with the corporation for any proved infringements, even in the absence of the individual's actual knowledge that the infringements occurred. *Nick–O–Val Music Co., Inc. v. P.O.S. Radio, Inc.,* 656 F.Supp. 826, 828 (M.D.Fla.1987); *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 913–14 (D.Conn. 1980). Another test is that a corporate officer may be held vicariously liable (1) if the officer has a financial stake in the activity and (2) if the officer has the ability and right to supervise the activity causing infringement. *Fermata Intern. Melodies v. Champions Golf Club,* 712 F.Supp. 1257, 1262 (S.D.Tex.1989), *aff'd,* 915 F.2d 1567 (5th Cir. 1990).

## DISCUSSION

### I. LIABILITY[1]

▇ With respect to the first three elements, plaintiffs have submitted Certificates of Copyright Registration for the seven compositions involved in this case. Under 17

---

1. The Court notes that defendants failed to include a statement of controverted material facts as required by Local Rule 311.12. Thus, the facts contained in plaintiffs' "Concise Statement of Uncontroverted Materials Facts in Support of Motion for Summary Judgment" are taken as uncontroverted. *See, Laracuente v. Chase Manhattan Bank,* 891 F.2d 17, 19 (1st Cir.1989) (procedural defect not to include a statement of contested issues of material fact along with opposition to motion for summary judgment, thus district court acted properly in considering movant's statement of material facts as uncontroverted and finding facts to have been admitted by opposing party); *Rivera Rosario v. Granada Mills, Inc.,* 142 F.R.D. 50 (D.P.R.1992).

U.S.C. § 410(c), these documents constitute prima facie evidence of the elements of originality and authorship, compliance with the formalities of the Copyright Act, and plaintiffs' ownership of the copyrights involved in the absence of any contradictory evidence. *Jobete Music,* 713 F.Supp. at 177. As defendants have not presented any evidence to contradict the copyright registration certificates submitted by plaintiffs, the first three elements of copyright infringement are thus established.

Concerning the fourth element, defendants have not attempted to contradict the allegation that they publicly performed plaintiffs' musical compositions, by broadcast on radio station WBRQ–FM, on February 6, 1991. As such, defendants have failed to present evidence sufficient to raise a genuine issue of material fact in the face of the affidavits of Kenneth Ayden and Gilberto Torres which jointly establish that on the date in question plaintiffs musical compositions were played on WBRQ–FM.

Finally, with regard to the fifth element of copyright infringement, lack of authorization, defendants have admitted that if plaintiffs allegations are true, then they did not have the copyright owners' authorization to play the songs in question on February 6, 1991. Since it is beyond dispute that plaintiffs compositions were in fact played on the date in question and it is evident that there was no authorization for such broadcast, the elements of copyright infringement have been established as a matter of law.

■ With regard to the joint and several liability of co-defendant Carrasquillo, Carrasquillo admits to having primary responsibility for the control, management, operation and maintenance of the affairs of Radio Musical. Furthermore, Carrasquillo has been working with WBRQ–FM since it went on the air in 1977, initially, as General Manager, and for the last five years, as President. Still further, his status as a stockholder of the company is undisputed. It is clear from the record, therefore, that Carrasquillo had the right and ability to control the corporation's activities, a financial interest in those activities, and a sufficient involvement with WBRQ–FM's daily operations to implement measures to avoid continued infringements ASCAP-held copyrights. Consequently, the Court finds that Carrasquillo and Radio Musical will be jointly and severally liable for the copyright violations.

## II. DEFENSES

■ Defendants' only argument in opposition to this motion is that they have never had a "list" of musical compositions in the ASCAP repertory which would serve to put them on notice of the copyrighted songs which they must not broadcast. Defendants seem to claim that, in the absence of this list, they are otherwise unable to avoid infringing on the copyrights of ASCAP members. In *Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Association, Inc.,* 554 F.2d 1213, 1215 (1st Cir.1977), the Court of Appeals for this Circuit ruled that there is no obligation for the owner of a copyright to furnish a complete or even an edited list of the millions of compositions in its repertory and the Court of Appeals further indicated that the obligation of the copyright owner is merely to respond to a written request asking whether certain specifically named compositions are in the ASCAP repertory. Nowhere in their Answer to the Complaint or in their opposition to this motion do defendants allege that such a written request was ever submitted to and ignored by plaintiffs or their agent ASCAP. Consequently, "plaintiffs failure to supply a complete list of all copyrighted compositions is of no legal consequence." *Cass Cty. Music Co. v. Vineyard Country Golf Corp.,* 605 F.Supp. 1536, 1537 (D.Mass.1985) (rejecting similar defense where alleged oral, but not written, requests were made). Thus, in the absence of evidence that defendants conducted the requisite inquiries to ascertain whether they were violating copyrights held by ASCAP members, their argument does not constitute a defense to claims of copyright infringement, and cannot, therefore, suffice to create a genuine issue for trial. *See also, Fermata Intern.,* 712 F.Supp. at 1261 (finding similar defense to lack merit where evidence presented of written request and written response).

### III. DAMAGES

Plaintiffs herein are seeking injunctive relief, statutory damages and costs including reasonable attorney's fees.

#### a. Injunctive Relief

■ Injunctive relief is addressed in section 502(a) of Title 17, United States Code, which provides that:

> [a]ny court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

17 U.S.C. § 502(a) (1982). If liability is established and a continuing threat to the copyright exists, courts have usually granted permanent injunctions. *Fermata Intern.*, 712 F.Supp. at 1262 *citing, National Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 732–33 (8th Cir.1986); *Pacific & Southern Co., Inc. v. Duncan*, 744 F.2d 1490, 1499 (11th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985). *See also, Jobete Music*, 713 F.Supp. at 179 (courts have held that copyright owners are entitled to an injunction when a "substantial likelihood of further infringement" exists). "The general rule in alleged copyright infringement cases is that, for a preliminary injunction motion, irreparable injury is presumed once the movant has established a case of copyright infringement." *Fermata Intern.*, 712 F.Supp. at 1262 *citing, Northwestern Bell Tel. Co. v. Bedco of Minn., Inc.*, 501 F.Supp. 299, 303 (D.Minn.1980).

The evidence demonstrates that this is the fourth time defendants have been sued for copyright infringement and the second time they have been sued for willful copyright infringement in the last three years. The previous two suits were brought by plaintiffs who were members of ASCAP. It is also clear from the record that defendants have been aware of the necessity of obtaining permission to publicly perform copyrighted music since 1977. (*See*, Affidavit of Ross Charap, p. 3). To date defendants are not licensed to perform any musical works in the ASCAP repertory. *See e.g., Ackee Music, Inc. v. Williams*, 650 F.Supp. 653 (D.Kan. 1986) (remaining unlicensed constitutes substantial risk of continued infringement). In fact, this suit addresses only the latest episode of copyright infringement involving defendants over the past 14 years. The Court believes it has been amply demonstrated that defendants are recidivists who continue to perform music in ASCAP's repertory without obtaining or maintaining the proper licenses. Based on the clear evidence of record, plaintiffs are entitled to an injunction prohibiting defendants from performing plaintiffs' copyrighted songs without proper authorization. To prevent continued violations of the copyrights of ASCAP members, several courts have recently recognized that injunctions of larger scope may be appropriate, and have entered orders prohibiting defendants from performing any musical composition licensed through ASCAP. *Brockman Music v. Miller*, 1990 Copyr.L.Dec. (CCH) ¶ 26,602; 1990 WL 132486 (W.D.Mich.1990); *Brockman Music v. Mass Bay Lines, Inc.*, 1988 Copyr.L.Dec. (CCH) ¶ 26,259, 1988 WL 90833 (D.Mass.1988) & (Amended Judgment, 1988 Copyr.L.Dec. ¶ 26,269; 1988 WL 100420). Accordingly, the Court shall also enjoin defendants from further infringements of any copyright licensed through ASCAP.

#### b. Statutory Damages

Statutory damages are governed by Section 504(c) of Title 17, United States Code, which provides in pertinent part:

(c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $500 or more than $20,000 as the court considers just ...

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may

increase the award of statutory damages to a sum of not more than $100,000 ... 17 U.S.C. § 504(c) (As amended Pub.L. 100–568, § 10(b), Oct. 31, 1988).

 Courts have wide discretion to set damages within these statutory limits. *International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir.1988); *see also, Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1, 3 (1st Cir.1983) (stating that the determination of statutory damages is committed, within limits, to the court). The factors to be considered in fixing the amount of statutory damages are: (1) the expenses saved and profits reaped by defendants in connection with the infringements; (2) the revenues lost by plaintiffs as a result of defendants' conduct; and (3) the infringers state of mind—whether willful, knowing or merely innocent. *Nick–O–Val Music Co.*, 656 F.Supp. at 829, *citing, Boz Scaggs Music*, 491 F.Supp. at 914; *Jobete Music*, 713 F.Supp. at 179.

 In this case, plaintiffs offer no proof of actual damages. Plaintiffs state that they are willing to withdraw their monetary claims for statutory damages in six out of seven causes of action, if the Court will award the maximum statutory damages of $100,000 on the remaining cause of action. In the alternative, if the Court does not believe the maximum damages award is warranted, plaintiffs request an award of $15,000 per infringement, for a total of $105,000 in statutory damages. In support of this amount, plaintiffs offer the affidavit of Ross Charap, which shows that WBRQ–FM would owe approximately $114,000 to ASCAP in license fees had it been properly licensed by to date. Plaintiffs also direct the Court's attention to the defendants' fourteen year history of recalcitrant and erratic compliance with ASCAP licensing procedures, to various episodes of infringement, and to the chronology of costly and repetitive, but ultimately ineffective, litigation which defendants' conduct has spawned. The record shows (1) that defendants have consistently fallen into arrears in the payment of license fees, forcing ASCAP, time after time, to terminate its licenses; (2) that defendants have repeatedly been advised of their outstanding indebted-

ness with regard to license fees; (3) that defendants have failed to observe court-approved settlement agreements that have been executed in connection with compliance litigation instituted against them; (4) that defendants knew or should have known that they faced liability under federal copyright laws when their licenses were revoked; and (5) that defendants ignored this fact and, without proper licensing or other valid authorization, broadcast the copyrighted musical compositions. This uncontroverted evidence is sufficient to sustain a finding that defendants acted willfully. *See, Nick–O–Val Music Co.*, 656 F.Supp. at 829 (finding willful violation under similar circumstances).

The Court notes, however, that none of the decisions relied upon by plaintiffs support a damage award in the amount which they seek. Nevertheless, in light of the circumstances presented by plaintiffs, and keeping in mind that a damage award should achieve a deterrent purpose, a substantial award in this action is warranted. Therefore, the Court, in its discretion shall award statutory damages for each of the seven infringements in the amount of $10,000 dollars, for a total award of $70,000. To award less would not deter defendant from continuing to violate the copyright laws.

#### c. Costs and Attorney's Fees

The recovery of costs and attorney's fees by the prevailing party in a copyright infringement action is governed by 17 U.S.C. 505, which provides:

[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

In the absence of mitigating factors courts routinely grant both costs and attorney's in successful infringement actions. *Jobete Music*, 713 F.Supp. at 180; *See also, Fermata Intern.*, 712 F.Supp. at 1264, *citing, Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir.1985). Based on the pre-

ceding decisions, this Court will grant reasonable costs and attorney's fees upon submission of affidavits setting forth plaintiffs' cost and attorney's fees.

The Court notes that a lack of determination as to the collateral issues of costs and attorney's fees does not preclude issuance of a final, appealable judgment of the merits. *Fermata Intern.,* 712 F.Supp. at 1264, *citing White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 453 n. 14, 102 S.Ct. 1162, 1167 n. 14, 71 L.Ed.2d 325 (1982), *cited with approval in, Holmes v. J. Ray McDermott & Co., Inc.,* 682 F.2d 1143, 1146 (5th Cir.1982), *cert. denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983) *appeal after remand,* 734 F.2d 1110 (5th Cir.1984).

WHEREFORE, plaintiffs' Motion for Summary Judgment is hereby granted. Judgment shall be entered accordingly.

IT IS SO ORDERED.