Aida RIVERA ROSARIO, Plaintiff,

v.

GRANADA MILLS, INC., Defendant.

Civ. No. 90–2258(PG).

United States District Court,
D.Puerto Rico.

April 29, 1992.

Wilfredo Marcial González, Santurce, P.R., for plaintiff.

Graciela J. Belaval, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e, *et seq.* Plaintiff also prays that the Court use its pendent jurisdiction to entertain her claim based on Puerto Rico law. In the complaint, plaintiff alleges that she was submitted to a pattern and practice of discrimination by her employer, Granada Mills, Inc., and was eventually discharged therefrom for being pregnant. At this juncture in the proceedings, the defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56(c).

### The Facts

There is an oft quoted saying among Civil Procedure professors in law schools throughout the United States which goes as follows: "no matter how strong a case you may have, not knowing your procedure will hurt your case." This is precisely what has happened to plaintiff in the case at bar. Local Rule 311.12 of this District Court states in relevant part:

> Upon any motion for summary judgment, there shall be served and filed annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record.

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to by the opposing party.

Said rule has repeatedly been endorsed by our Circuit. *See Rivas v. Federación de Asociaciones Pecuarias,* 929 F.2d 814, 816 n. 2 (1st Cir.1991); *Laracuente v. Chase Manhattan Bank,* 891 F.2d 17, 19 (1st Cir.1989). In the case at bar, plaintiff has failed to provide such a statement together with her opposition to defendant's motion for summary judgment.[1] Thus, for pur-

---

1. The closest plaintiff comes to complying with Local Rule 311.12 is in the section of her brief entitled "Restatement of the Case." However in said section plaintiff only states her own version of the facts and fails to provide the basis for her contentions supported by specific reference to the record.

poses of this opinion, the Court shall deem the facts presented in the defendant's statement of material facts as being the uncontroverted facts of this case [2].

### The Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The burden on a moving party that does not bear the burden of proof at trial "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

### Discussion

There are three methods through which a plaintiff in a Title VII case can prove discrimination. First, the plaintiff can present statistical evidence. *See Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Second, the plaintiff can present direct evidence of discrimination. *See Slack v. Havens*, 7 Fair Empl.Prac.Cas. 885, 1973 WL 339 (S.D.Cal.1973), *aff'd as modified*, 522 F.2d 1091 (9th Cir.1975). Finally, the plaintiff can create a *prima facie* case of discrimination by satisfying the four pronged test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### A. Statistical evidence of discrimination

In the case at bar, plaintiff has not offered any statistical evidence to support her position. Contrariwise, defendant has undisputedly shown that Granada Mills employs about 240 employees, mostly females [3], and that during the past ten years 102 of these females have been pregnant, one having four pregnancies, two having three pregnancies, and eighteen having two pregnancies [4]. Each of these employees received maternity benefits and returned to work [5]. Defendant's position is further strengthened by the fact that plaintiff herself was originally hired while she was pregnant [6].

### B. Direct evidence of discrimination

■ In her complaint, plaintiff alleges two instances of discriminatory remarks by her superiors. First, she alleges that when she showed her positive pregnancy test to her supervisor, Matilde Berríos, she made the following remark: "you are fucked you're hot with Carmen Iris." [7] When plaintiff asked why, Ms. Berríos answered: "Carmen Iris does not like for fast operator to get pregnant because they get slow and the production decrease [sic] they get slow and the production decrease and also because pregnant workers lost to [sic] time in medical appointment." [8] The second such incident allegedly occurred when plaintiff asked permission to undergo a sonogram test. When Carmen Iris Ortiz was informed of such request she stated: "you women when pregnant should stay in your home you lose too much time in medical appointments." [9]

The above stray discriminatory remarks by themselves, even though made by plaintiff's direct supervisor, are insufficient to avoid summary judgment for the defendant. *See Merrick v. Farmers Insurance Group*, 892 F.2d 1434, 1438 (9th Cir.1990); *Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir.1989). Rather, the plaintiff must show that the employer actually relied on gender in making its decision. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 1791, 104

---

**2.** The defendant's Statement of Material Facts is appended to this opinion.

**3.** *See* Pretrial Order Uncontested Material Fact 4.

**4.** *See* Defendant's Exhibit 1 accompanying its Motion for Summary Judgment.

**5.** *Id.*

**6.** *See* Pretrial Order Uncontested Material Fact 6.

**7.** *See* Complaint at ¶ 17.

**8.** *See* Complaint at ¶ 17.

**9.** *See* Complaint at ¶ 20(f).

L.Ed.2d 268 (1989). Thus, the Court must determine whether plaintiff has presented any additional evidence to support her case.

According to plaintiff, after she showed the pregnancy test results to Matilde Berríos, who in turn showed them to Carmen Iris Ortiz, she was removed to another work station in the factory where there was no incentive pay on piece work in excess of the daily work load.[10] After complaining about this situation, plaintiff was thereafter allegedly moved back and forth from her regular position to other positions. Ultimately, due to complaints about an asthma condition which developed from the new work she was assigned, plaintiff was restationed at her old work station, but with no piece incentive.[11] The undisputed evidence contradicts plaintiff's allegation, as the company records (which contain plaintiff's signature) clearly indicate that she continued to perform her regular work at all times after November 4, 1989.[12]

*C. McDonnell Douglas test: circumstantial evidence of discrimination*

■ Under the *McDonnell Douglas* test a Title VII plaintiff can establish a *prima facie* case of sex discrimination by proving that:

1) she was a member of the protected group;

2) she was discharged;

3) she was replaced by a person with roughly the same qualifications; and

4) she was qualified for and adequately performed her job.

*Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 153 (1st Cir.1990). Once established, this *prima facie* case shifts the burden of production to the employer, who must articulate some legitimate, nondiscriminatory reason that justifies the firing. *Id.* The burden then shifts back to plaintiff, who must demonstrate that the employer's proffered reasons were pretextual. *Id.*

10. *See* Complaint at ¶¶ 19, 20(a).

11. *See* Complaint at ¶ 20.

12. *See* Defendant's Exhibit 4 accompanying its Motion For Summary Judgment.

In the case at bar, plaintiff only meets two of the necessary requirements to establish her *prima facie* case of discrimination. First, she is a female, and was pregnant at the time of her alleged dismissal. Second, she was qualified for and adequately performed her job. However, plaintiff's allegation that she was fired[13] is contradicted by the undisputed fact that following an underpayment dispute, plaintiff left her work.[14] Therefore, plaintiff has failed to establish a *prima facie* case of sex discrimination under *McDonnell Douglas.*

### Conclusion

The Court finds that plaintiff has failed to create a genuine issue of material fact both as to defendant engaging in a practice of discrimination and as to discharging her from work.

WHEREFORE, defendant's Motion for Summary Judgment is hereby GRANTED. Plaintiff's Title VII claim is DISMISSED with prejudice. The Court further DECLINES to entertain plaintiff's pendent claim under Puerto Rico law.

IT IS SO ORDERED.

### ADDENDUM

IN THE UNITED STATES
DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AIDA RIVERA ROSARIO, Plaintiff,

v.

GRANADA MILLS, INC., Defendant.

Civil No. 90–2258 (PG)

TITLE VII, SEX (PREGNANCY)
DAMAGES

MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE
DISPUTE

1. Plaintiff, Aida Rivera Rosario, is a female of legal age, skilled worker as machine operator, citizen of the United States

13. *See* Complaint at ¶ 21.

14. *See* Pretrial Order Uncontested Material Fact 15.

and resident of Caguas, Puerto Rico. (Pretrial Order Uncontested Material Facts 1.)

2. Defendant Granada Mills, Inc. (Granada), is a Delaware corporation duly authorized to do business in Puerto Rico, where it manufactures ladies garments in two plants at Villa Blanca Industrial Park in Caguas, Puerto Rico for the past 30 years. (Pretrial Order Uncontested Material Facts Number 2.)

3. Defendant is an "employer" as defined by Title VII; the PDA, and Puerto Rico Law 100; Law 69 and Law 3. (Pretrial Order Uncontested Material Facts Number 3.)

4. It employs about 240 employees most of which are females. (Pretrial Order Uncontested Material Facts Number 4.)

5. Of these employees, during the past 10 years, 102 have been pregnant, one having four pregnancies, two other employees having three pregnancies each and eighteen others having two pregnancies each. Each and everyone of these employees received maternity benefits and returned to work. (Affidavit of Jorge Ortiz, attached as Exhibit 1; payroll records for the period 1980–1990 stipulated in the Pretrial Order as Defendant's Exhibit F, attached as Exhibit 2.)

6. Plaintiff was originally hired on August 25, 1986. (Pretrial Order Uncontested Material Facts Number 5.)

7. She was pregnant at that time. (Pretrial Order Uncontested Material Facts Number 6.)

8. Plaintiff resigned in the first quarter of 1987 because of the health problems of her eldest child. (Pretrial Order Uncontested Material Facts Number 7.)

9. She thereafter sought reemployment and was rehired in April, 1987. (Pretrial Order Uncontested Material Facts Number 8.)

10. Plaintiff's common-law husband has also been an employee of Granada at all times relevant to the present complaint. (Plaintiff's deposition, attached as Exhibit 3, pgs. 47, 49, Affidavit of Jorge Ortiz, Exhibit 1, paragraph 13.)

11. Mr. Jorge Ortiz, Mrs. Carmen I. Ortiz and Mrs. Matilde Berríos are all supervisors and/or managerial employees of Defendant. (Pretrial Order Uncontested Material Facts Number 9.)

12. Matilde Berríos has always been Plaintiff's direct supervisor. (Pretrial Order Uncontested Material Facts Number 10.)

13. Plaintiff obtained a positive pregnancy test result on November 4, 1989, a Saturday. (Pretrial Order Uncontested Material Facts Number 11.)

14. However, Plaintiff visited her obstetrician, Dr. Pedro Roldán, for the first time in relation to her pregnancy on December 16, 1989, a Saturday also. (Pretrial Order Uncontested Material Facts Number 12.)

15. The work assignments of Plaintiff did not change after November 4, 1989. The company records duly signed by her reflect that Plaintiff continued to perform her regular work setting sleeves at all times material to the complaint. (Weekly work sheets for Plaintiff covering the period of November and December 1989, marked as Exhibit H in the Pretrial Order, and attached hereto as Exhibit 4.)

16. Plaintiff was not absent for any significant period of time in the period beginning on November 6, 1989 and ending on December 29, 1989, nor did she provide Defendant with medical excuses for her absences. (Affidavit of Carmen Iris Ortiz, attached as Exhibit 5.)

17. Plaintiff's time cards for the month of November, 1989 show that she was absent only on the afternoon of November 7 and all day November 8, 1989 (12 hours), and six hours on November 27. (Plaintiff's time cards, marked as Exhibit C in the Pretrial Order, and attached as Exhibit 6.)

18. Specifically, contrary to her deposition testimony, Plaintiff did not receive medical attention for her alleged asthma condition from Dr. Regino Flores, nor did she see Dr. Flores at all on November 10, 1989. (Affidavit of Dr. Regino Flores, at-

tached as Exhibit 7 with Plaintiff's medical record attached.)

19. In fact, Dr. Flores did not examine her at any time during the year 1989. (Affidavit of Dr. Regino Flores, Exhibit 7.)

20. On December 27, 1989, Plaintiff requested permission to undergo a sonogram which revealed she was 15 weeks pregnant. (Pretrial Order Uncontested Material Facts Numbers 13 and 14.)

21. On December 28, 1989, after Plaintiff was paid, she called payroll clerk José Ramón Acevedo to Carmen Iris Ortiz's desk to question Acevedo about an underpayment of her piece rate of about 14 or 15 dollars. (Affidavits of Carmen Iris Ortiz, Exhibit 5.)

22. Acevedo reviewed the tickets with Plaintiff and stated to her that the underpayment was of $5.72 and he would cut a check next day. (Affidavit of Carmen Iris Ortiz, Exhibit 5.)

23. Plaintiff became very upset, stating that the company owed her a lot of money and that she had the tickets at home to prove it. (Affidavit of Carmen Iris Ortiz, Exhibit 5.)

24. Carmen Iris Ortiz intervened, stating to Plaintiff that she could not believe that the company owed money to any of the operators, but if she had the evidence she should take it to the company to be paid. (Affidavit of Carmen Iris Ortiz, Exhibit 5.)

25. Plaintiff replied that she would bring the evidence but she was leaving right then and there, that she could not tolerate the situation. (Affidavit of Carmen Iris Ortiz, Exhibit 5.)

26. Plaintiff was usually very assertive of her rights, and would demand redress for any perceived offense, as she did on April 1989, when she understood that her husband had been removed as a time keeper because he was suspected of favoring her by setting easy work loads. (Affidavit of Jorge Ortiz, Exhibit 1, paragraphs 14 to 18.)

27. Following the underpayment dispute, on December 28, 1989, Plaintiff left her machine and went to punch her time card at 3:24 p.m., 60 minutes early. (Affidavits of Carmen Iris Ortiz, Exhibit 5, and Pretrial Order Uncontested Material Facts Number 15.)

28. Carmen Iris Ortiz tried to stop Plaintiff without success. (Affidavit of Carmen Iris Ortiz, Exhibit 5.)

29. Carmen Sara Rivera, an employee, also tried to stop Plaintiff, but Plaintiff went to get the car keys from her husband, and left. (Affidavit of Carmen Sara Rivera, attached as Exhibit 9.)

30. Plaintiff did not call in the next day, December 29, 1989, nor offered any explanation for her absence. (Affidavit of Carmen Iris Ortiz, Exhibit 5.)

31. Plaintiff did not provide any medical certificate of her alleged high blood pressure condition to Defendant on December 28, 1989, or thereafter because none was issued, contrary to her deposition testimony in which she stated that Dr. Flores examined her on December 28, 1989, diagnosed high blood pressure, and recommended rest for two weeks giving her a written certificate to take back to the company. (Affidavit of Dr. Regino Flores, Exhibit 7.) (See Plaintiff's deposition translation, pgs. 56–59.)

32. When Dr. Flores did examine Plaintiff on January 4, 1990, he took her blood pressure and it was perfectly normal. (Affidavit of Dr. Regino Flores, Exhibit 7.)

33. During that visit on January 4, 1990, she informed Dr. Flores of an alleged asthma condition two months earlier, in November, 1989, and requested a medical certificate backdated November 10, 1989, which Dr. Flores issued. (Affidavit of Dr. Regino Flores, Exhibit 7, paragraph 4.)

34. The medical records kept by Dr. Regino Flores and Dr. Pedro Roldán do not reflect that Plaintiff was treated at any time for a high blood pressure condition. (Affidavit of Dr. Regino Flores, Exhibit 7, paragraph 8, and medical record of Dr. Pedro Roldán, attached as Exhibit 10.)

35. Defendant shuts production for a Christmas recess from December 1 to De-

cember 7, 1990. (Affidavit of Jorge Ortiz, Exhibit 1, pg. 8.)

36. Late in the first week of 1990, while Defendant was performing its inventory, Plaintiff entered the grounds of the company at lunch time and spoke to her friend Carmen Sara Rivera. Rivera asked Plaintiff whether she was coming back to work, and Plaintiff replied that she was ill with high blood pressure and her doctor had ordered her to rest. Rivera insisted that Plaintiff should speak to Supervisor Carmen Iris Ortiz to return to work and Plaintiff simply stated that she was going to think about it. (Affidavit of Carmen Sara Rivera, Exhibit 9.)

37. On January 9, 1990 Plaintiff, through her husband, requested a letter certifying that she was not working at the time in order to be eligible to collect foods stamps, but did not request to be given work. The letter was issued. (Affidavit of María Antonia Piñeiro, attached as Exhibit 11.)

38. Plaintiff did not seek reemployment thereafter. (Affidavits of Carmen Iris Ortiz, Exhibit 5, Jorge Ortiz, Exhibit 1, and María Antonia Piñeiro, Exhibit 11.)

39. Plaintiff filed charges of Discrimination with EEOC and the Antidiscrimination Unit on January 23, 1990, but did not seek reinstatement as a remedy. (Pretrial Order Uncontested Material Facts Number 17, Affidavit of Jorge Ortiz, Exhibit 1.)

40. On February 29, 1990, Granada informed the Antidiscrimination Unit and EEOC that Plaintiff had abandoned work, but her job continued to be available. (Affidavit of Jorge Ortiz, Exhibit 1.)

41. Plaintiff gave birth on June 21, 1990 and was released to return to work on July 21, 1990. (Pretrial Order Uncontested Material Facts Number 18.)

42. She was offered reinstatement on August 6, 1990 and is employed by Defendant. (Pretrial Order Uncontested Material Facts Number 19.)

43. During the period relevant to the present complaint, Plaintiff did not have a medically diagnosed asthma condition, nor did she undergo treatment. (Affidavit of Dr. Regino Flores, Exhibit 7.)

44. During the period relevant to the present complaint, Plaintiff did not have a medically diagnosed high blood pressure condition, nor was she under treatment. (Affidavit of Dr. Regino Flores, Exhibit 7.)

45. On January 17, 1991, two days after her deposition, Plaintiff visited Dr. Regino Flores and asked for a medical certificate backdated to December 28, 1989, certifying that she had suffered a high blood pressure episode on that day and recommending rest for two weeks. (Affidavit of Dr. Regino Flores.)

In San Juan, Puerto Rico, this 18th day of October, 1991.

I HEREBY CERTIFY that on this same date a true and faithful copy of the foregoing document was mailed to Atty. Wilfredo Marcial González, Enrique J. Mendoza Méndez Law Offices, P.O. Box 9282, Santurce, Puerto Rico 00908.

MARTINEZ, ODELL, CALABRIA & SIERRA

P.O. Box 998

Hato Rey, Puerto Rico 00919–0998

Telephone: 753–8914

By: /s/ Graciela J. Belaval

GRACIELA J. BELAVAL

Attorney's No. 201007