Broadcast Music v. Rockingham Venture CV-94-70-JD    05/26/95 P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Broadcast Music, Inc., et al.</u>

　　v.　　　　　　　　　　　　　　　　　Civil No. 94-70-JD

<u>Rockingham Venture, Inc., d/b/a</u>
<u>Rockingham Park</u>

O R D E R

The plaintiffs, Broadcast Music, Inc. ("BMI"); Dingletown
Music, a Division of Frank Gari Productions, Inc.; Alley Music
Corp.; Trio Music, Inc.; Andrew Gold and Charles Plotkin, a
partnership d/b/a Luckyu Music; Acuff-Rose Music, Inc.; Irving
Music, Inc.; Paul Hardy Kennerley, d/b/a Littlemarch Music; EMI
Blackwood Music, Inc.; Scoop Enterprises, Inc., d/b/a Bruiser
Music; and Ensign Music Corp. bring this copyright infringement
action against defendant, Rockingham Venture, Inc., d/b/a
Rockingham Park ("Rockingham") pursuant to 17 U.S.C.A. §§ 101 <u>et</u>
<u>seq</u>. (West 1977 & Supp. 1994) ("Copyright Act").[1]

---

[1]The suit alleges infringement of seven musical compositions
owned by the plaintiffs.  The musical compositions and their
respective authors are: (1) "The Oprah Winfrey Theme" by Frank
Gari Productions (plaintiff Dingletown Music, a Division of Frank
Gari Productions, Inc.); (2) "Good Lovin'" by Arthur Resnick and
Rudy Clark (plaintiffs Alley Music Corp. and Trio Music Co.,
Inc.); (3) "Thank You For Being A Friend" by Andrew Gold
(plaintiff Andrew Gold and Charles Plotkin, a partnership d/b/a
Luckyu Music); (4) "When Will I Be Loved" by Phil Everly
(plaintiff Acuff-Rose Music, Inc.); (5) "Hillbilly Rock" by Paul
(continued...)

The plaintiffs seek to enjoin the defendants from future infringement and also request damages, costs, and attorney's fees.  The court's jurisdiction is based on 28 U.S.C.A. §§ 1331, 1338 (West 1993).  Before the court are plaintiffs' motion for summary judgment (document no. 11) and defendant's motion for summary judgment (document no. 15).

## Background

Plaintiff BMI is a nonprofit organization which acquires and licenses the nonexclusive public performance rights of certain copyrighted musical compositions ("BMI Music").  Plaintiffs' Memorandum of Law in Support of Summary Judgment ("Plaintiffs' Memorandum for Summary Judgment") at 2.  The other plaintiffs own the copyright to the various musical compositions which are the subject of this lawsuit.  Id.  Under an agreement with these copyright owners, BMI licenses the performance rights to establishments including concert halls, restaurants, nightclubs and hotels.  Id.

---

[1](...continued)
Kennerley (plaintiffs Irving Music, Inc. and Paul Hardy Kennerley d/b/a Littlemarch Music); (6) "We Just Disagree" by Jim Krueger (plaintiffs EMI Blackwood Music, Inc. and Scoop Enterprises, Inc. d/b/a Bruiser Music); and (7) "Gentle On My Mind" by John Hartford (plaintiff Ensign Music Corp.).

The defendant Rockingham owns and operates the Rockingham Park thoroughbred racing track in Salem, New Hampshire. Defendant's Memorandum of Law in Objection to Plaintiffs' Motion for Summary Judgment ("Defendant's Memorandum in Opposition") at 2. In addition to the track, Rockingham sponsors horse racing gambling operations, concession areas and restaurants and lounges where food and beverages are served. See id. at 2-3. In its restaurants and lounges Rockingham has installed television sets at individual tables and booths. Each television set is connected to closed-circuit television racing coverage and is also capable of receiving traditional television programming broadcast over-the-air. Id. at 3. An individual occupying a booth or table where a television set is located has the ability to choose to watch either closed-circuit racing coverage or over-the-air television transmissions. Id. In contrast, television sets located in other areas of the racing facility are tuned only to the closed-circuit television channels that broadcast racing programs. Id.

On March 8, 1991, BMI informed the defendant by letter that Rockingham was required to obtain authorization for those copyrighted musical compositions performed publicly at the racing facility and that this could be accomplished by executing a

3

licensing agreement with BMI.  Id.[2]  The defendant did not enter into a license agreement since it did not play music throughout the racing facility.  Id. at 3-4.

On April 26, 1991, September 13, 1991, December 2, 1991, June 29, 1992, and November 30, 1992, BMI mailed additional letters to the defendant urging it to enter into a license agreement.  Plaintiff's Motion for Summary Judgment, Exhibits A-F.  The defendant did not enter into an agreement and, on December 1, 1992, BMI mailed a letter to the defendant instructing it to cease use of BMI-licensed music.  Id., Exhibit G.

Sometime between December 1, 1992 and April 2, 1993, the defendant mailed a check in the amount of $1,818 to BMI along with an unsigned license agreement.  BMI returned the check with a letter dated April 2, 1993, stating that the check would not be accepted since the defendant did not sign the license agreement. Id., Exhibit H.  On June 8, 1993, BMI sent the defendant another letter informing the defendant to cease use of BMI-licensed music.  Id., Exhibit I.  On June 25, 1993, BMI again mailed a letter to the defendant urging it to enter into a license

---

[2]The defendant does not deny receipt of any correspondence that BMI claims to have mailed.

4

agreement with BMI and, once again, the defendant did not enter into an agreement.  See id., Exhibit J.

On June 17, 1993, June 18, 1993, and October 1, 1993, BMI representative Mark Cornaro personally heard the performance of seven BMI-licensed compositions during visits to the racing facility.  Declaration of Cornaro ("Cornaro Affidavit").  After Cornaro's visits on June 17, 1993, and June 18, 1993, BMI informed the defendant by a letter sent by overnight courier on July 8, 1993, that copyright infringement had occurred at the racing facility.  Plaintiffs' Motion for Summary Judgment, Exhibit K.

On December 1, 1993, BMI mailed a letter to the defendant's attorney stating that it would file a lawsuit if the defendant did not enter into a license agreement.  Id., Exhibit L.  BMI commenced this lawsuit on behalf of itself and the other plaintiffs on March 29, 1994.

## Discussion

Before the court are the cross-motions of the parties for summary judgment.  The plaintiffs assert in their motion that there are no genuine disputes of material facts as to the defendant's infringement of their copyrighted musical compositions on June 17, 1993, June 18, 1993, and October 1,

1993, and that they are entitled to judgment as a matter of law. Plaintiffs' Memorandum for Summary Judgment at 4-9.

Conversely, the defendant urges summary judgment on the grounds that the undisputed factual record indicates that, as a matter of law, the plaintiffs will not be able to satisfy each element required to prevail in a copyright infringement action. Defendant's Memorandum in Support of Motion for Summary Judgment ("Defendant's Memorandum for Summary Judgment") at 7-8. In the alternative, the defendant asserts that even if the plaintiff can satisfy the elements of copyright infringement, it is shielded from liability by operation of the "homestyle exemption" of 17 U.S.C.A. § 110(5) and, therefore, is entitled to judgment as a matter of law. Id. at 11.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden is on the moving party to establish the lack of a genuine, material factual issue, and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st

6

Cir. 1993), cert. denied, 115 S. Ct. 56 (1994) (citations omitted). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial[,]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)), or suffer the "swing of the summary judgment scythe." Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989). "In this context, `genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party, Anderson, 477 U.S. at 248; `material' means that the fact is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 248).

The Copyright Act, 17 U.S.C.A. §§ 101 et seq. (West 1977 & Supp. 1994), protects

> original works of authorship fixed in any tangible
> medium of expression . . . from which they can be
> perceived, reproduced, or otherwise communicated,
> either directly or with the aid of a machine or device.

17 U.S.C.A. § 102(a) (Supp. 1994). Works of authorship include "musical works, including any accompanying words" and "sound recordings." Id. at § 102(a)(2), (7).

Under the Copyright Act, copyright owners possess the exclusive rights to authorize a public performance of their

7

musical compositions and the violation of this right constitutes infringement. <u>Id.</u> at §§ 106, 501(a). The legal or beneficial owners of a copyright may protect their interest by bringing a private action for infringement occurring while they are the owner of the copyright. <u>Id.</u> at § 501(b).[3] As a remedy, copyright owners may seek an injunction against future infringement, statutory damages, costs, and attorney fees. <u>Id.</u> at §§ 502, 504(c), 505.

To prevail in a copyright infringement action, the plaintiffs must establish five elements:

> (1) the originality and authorship of the compositions involved;
> (2) compliance with the formalities of the Copyright Act;
> (3) that plaintiffs are the proprietors of the copyrights of the compositions involved;
> (4) that the compositions were performed publicly; and
> (5) that the defendant had not received proper authorization for performance of the compositions.

<u>Merrill v. County Stores, Inc.</u>, 669 F. Supp. 1164, 1168 (D.N.H. 1987) (citing <u>Sailor Music v. Mai Kai of Concord, Inc.</u>, 640 F. Supp. 629, 632 (D.N.H. 1986)); <u>see</u> <u>Jobete Music Co. v. Massey</u>, 788 F. Supp. 262, 265 (M.D.N.C. 1992) (citing <u>Hulex Music v.</u>

---

[3]Generally, a work must be registered with the Copyright Office before an infringement action may be brought. <u>See</u> 17 U.S.C.A. § 411; 2 Melville Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B] (1994).

_Santy_, 698 F. Supp. 1024, 1030 (D.N.H. 1988)); _Chi-Boy Music v. Towne Tavern, Inc._, 779 F. Supp. 527, 529 (N.D. Ala. 1991).

The pending motions require the court to examine each element of copyright infringement to determine whether either party is entitled to summary judgment on the record as it presently exists.

## I. Originality and Authorship and Compliance with Copyright Formalities

The plaintiffs may satisfy the elements of originality and authorship and compliance with copyright formalities by producing a certificate of copyright registration, which is _prima facie_ evidence of the ownership and validity of the copyright.

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.

17 U.S.C.A. § 410(c) (West 1977); _Sandwiches, Inc. v. Wendy's Int'l, Inc._, 654 F. Supp. 1066, 1071 (E.D. Wis. 1987); _see_ _Chi-Boy Music_, 779 F. Supp. at 529; _Sailor Music_, 640 F. Supp. at 632. Once the plaintiffs establish a presumption of validity, the burden shifts to the defendant to rebut the presumption of proper copyright registration. _Hasbro Bradley, Inc. v. Sparkle Toys, Inc._, 780 F.2d 189, 192 (2d Cir. 1985) (citations omitted);

9

Knickerbocker Toy Co. v. Winterbrook Corp., 554 F. Supp. 1309, 1318 (D.N.H. 1982); 3 Nimmer at § 12.11[B]. The defendant may rebut the presumption by showing, for example, that the plaintiffs had not registered their musical compositions within five years after first publication or that the plaintiffs had not properly deposited their compositions with the Copyright Office. 3 Nimmer at § 12.11[B]; see 17 U.S.C.A. § 410(c).[4]

In this case the plaintiffs have submitted photocopies of the certificates of copyright registration for the musical compositions at issue. See Declaration of Judith Saffer ("Saffer Affidavit"), Exhibit A. The defendant has not responded with evidence, such as untimely registration or improper deposit with the Copyright Office, to rebut the presumption of copyright ownership and validity, and compliance with the formalities of the Copyright Act. The court finds that there exists no genuine dispute of material fact regarding originality and authorship or copyright compliance and, therefore, the first two elements of copyright infringement have been established as a matter of law.

## II. Proprietorship of Musical Compositions

---

[4]Nimmer states that "[t]he case law has yet to settle upon a consistent formulation of what evidence satisfies the defendant's burden." 3 Nimmer at § 12.11[B][2]. Since the defendant has not come forward with evidence to rebut this element, the court need not address the issue.

In cases where the plaintiffs are also the authors of their musical compositions the court may accept the copyright registration statement as prima facie evidence of proprietorship. Broadcast Music, Inc. v. Moor-Law, Inc., 484 F. Supp. 357, 363 (D. Del. 1980); see Chi-Boy Music, 779 F. Supp. at 529; Sailor Music, 640 F. Supp. at 632-33; 3 Nimmer at § 12.11[C]. However, where the plaintiffs are assignees of previously registered copyrights, the court requires additional evidence beyond the registration statements to find that the plaintiffs are the proprietors for purposes of satisfying the third element. Moor-Law, 484 F. Supp. at 363; 3 Nimmer at § 12.11[C].

The plaintiffs, with the exception of BMI, have submitted the Saffer Affidavit and copies of their copyright registrations as evidence that they are the proprietors of their respective musical compositions.

> Each of the musical compositions listed on line 2 of
> the Schedule of Plaintiffs' Complaint was registered
> with the Copyright Office on the date listed in line 5.
> A registration certificate bearing the number listed on
> line 6 was issued by the Copyright Office to the
> Plaintiff listed on line 4 or predecessor in interest.

Saffer Affidavit at 2. The defendant has not proffered evidence to rebut the affidavit. The court finds that the plaintiffs, with the exception of BMI, are the proprietors of their respective musical compositions.

11

BMI, as assignee of previously registered copyrights, also relies on the Saffer Affidavit as evidence that it is a proprietor of the compositions.

> On the date listed on line 8 of Schedule I, BMI had been granted, by the other Plaintiffs, the right to publicly perform these compositions and to issue public performance license agreements to music users.

Id.[5] Again, the defendant has not challenged the affidavit nor argued that BMI is not a proprietor of the musical compositions. The court finds that there is no genuine dispute of material fact relative to the question of proprietorship and, therefore, the plaintiffs have established the third element of copyright infringement as a matter of law.

III.  Public Performance

To establish the fourth element of copyright infringement, the plaintiff must submit evidence that the musical compositions were "performed publicly." Chi-Boy Music, 779 F. Supp. at 530; Sailor Music, 640 F. Supp. at 633.[6]

---

[5]The court notes that the reference to the Schedule by Saffer in her affidavit does not list a line 8. However, the defendant has not challenged the veracity of the affidavit.

[6]Courts have included a "for profit" requirement with the public performance element. E.g., Broadcast Music, Inc. v. Allis, 667 F. Supp. 356, 358 (S.D. Miss. 1986) (quotations and citations omitted) (a "performance at a restaurant to which the public is admitted and where food and beverages are sold is

(continued...)

12

The plaintiffs assert that any performance transmitted on the televisions is necessarily a public performance because the booths and tables containing the television sets are located in public restaurants and lounges and are in close physical proximity to the other racetrack patrons. See Plaintiffs' Memorandum in Opposition at 3-4. The plaintiffs argue that, unlike a hotel room, occupants of these booths and tables have no reasonable expectation of privacy and all activities conducted in these areas -- including the broadcast of over-the-air television -- is a public performance within the view of others and within the meaning of the Copyright Act. Id.

The defendant alleges that the television sets at issue are located at private booths and tables and are provided primarily to view those racing events transmitted through closed-circuit television. Defendant's Motion in Opposition at 8-11; Defendant's Memorandum for Summary Judgment at 8-11. Although it concedes that the television sets may be tuned to receive over-

⁶(...continued)
deemed to be given 'publicly for profit'"). Here, the performances at issue may be considered "for profit" in that the defendant installed television sets at booths and tables located within the dining facilities. Affidavit of Edward M. Callahan ("Callahan Affidavit") at ¶ 6. In recent years, however, some courts sitting in the First Circuit have not required plaintiffs to satisfy the "for profit" element of the prima facie case of copyright infringement. See Pedrosillo Music v. Radio Musical, Inc., 815 F. Supp. 511, 514 (D.P.R. 1993); Gnossos Music v. Di Pompo, 13 U.S.P.Q.2d 1539, 1540 (D. Me. 1989).

13

the-air television stations, the defendant contends that it lacks control over the television sets because the customer occupying the booth or table alone decides whether to change the channel from a closed-circuit broadcast to view an over-the-air broadcast.  Id.  Finally, the defendant argues that its booths and tables are legally analogous to hotel rooms where parties view television with an expectation of privacy.  Id.

Under the Copyright Act, to characterize a musical performance as "public" means

> (1) to perform it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of family and its social acquaintances is gathered; or
> (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or different times.

17 U.S.C.A. § 101.  To transmit is to "communicate [a performance] by any device or process whereby images or sounds are received beyond the place from which they are sent."  17 U.S.C.A. § 101; Broadcast Music, Inc. v. Claire's Boutiques, Inc., 949 F.2d 1482, 1495 (7th Cir. 1991), cert. denied 112 S. Ct. 1942 (1992).  Moreover, "or otherwise communicate" has been construed to relate to the "transmit" clause, so that "a public performance at least involves sending out some sort of signal via

14

a device or process to be received by the public at a place beyond the place from which it is sent." Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc., 866 F.2d 278, 282 (9th Cir. 1989).

In making a determination of whether a performance is public, the courts of appeals in at least two circuits have considered the relationship of the performance to the "nature" of the location where the performance occurred. Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1020 (7th Cir.), cert. denied, 112 S. Ct. 181 (1991) ("[T]he proper inquiry is directed to the nature of the place in which private video booths are located, and whether it is a place where the public is openly invited."); Columbia Pictures Indus., 866 F.2d at 281 (although hotel is open to the public, the rooms where alleged infringement occurred enjoyed "substantial degree of privacy, not unlike [people's] own homes"). The determination of whether a performance is public a question for the finder of fact. See Video Views, 925 F.2d at 1019-20 (describing jury instruction).

The plaintiffs assert that they sent a BMI representative, Mark Cornaro, to Rockingham Park on June 17, 1993, June 18, 1993, and October 1, 1993, to determine whether the defendant was performing BMI music in public. See Declaration of Stevens ("Stevens Affidavit") at 3. According to his affidavit, Cornaro

15

is familiar with the BMI repertoire and, based on this familiarity, witnessed the public performance of BMI music during visits to the racetrack. Cornaro Affidavit at 1. The defendant does not dispute that Cornaro attended Rockingham Park on the dates of the alleged infringement. Likewise, the defendant has not submitted evidence that would call into question the veracity of Cornaro's affidavit to the extent that the musical compositions were broadcast and, therefore, performed on the television sets. See Callahan Affidavit at ¶ 4.[7]

The plaintiffs also rely on an affidavit submitted by Edward M. Callahan, the defendant's vice-president and general manager. The plaintiffs assert that the photographs appended to the affidavit illustrate that each booth or table is located in "open common areas" and that the occupants do not enjoy an expectation of privacy similar to a hotel room. Plaintiffs' Memorandum in Opposition at 3-4; See Callahan Affidavit at Exhibit 1.

Conversely, the defendant argues that the televisions at the booths and tables are not public, but rather enjoy an expectation of privacy similar to one's home or a hotel room. Defendant's

---

[7]Under the Copyright Act, a musical composition is "performed" when it is recited, rendered or played, "either directly or my means of any device or process[.]" 17 U.S.C.A. § 101. The defendant concedes that the broadcast of over-the-air television constitutes a performance within the meaning of the Copyright Act. Defendant's Memorandum in Opposition at 8, fn.3.

16

Memorandum in Opposition at 3. In support of its position, the defendant submits the Callahan Affidavit. In his affidavit, Callahan testifies that

> [t]he primary function of Rockingham Park's television sets is to allow our customers to view races over a closed-circuit channel from their box or table. The 13" television set at each box or table is only capable of being viewed and are only meant to be viewed by the individual patrons at the box or table.
>
> It is the individual patrons of Rockingham Park who actually control the television sets -- and what is viewed on them -- from their private table or box, just as they would in the comfort of their own homes.

Callahan Affidavit at ¶¶ 6, 7. Finally, the defendant asserts that the photographs appended to the Callahan Affidavit depict the private nature of the booths and tables. See id. at ¶ 8, Exhibit 1.

The court finds that there exists a genuine dispute of material fact over whether the broadcast of over-the-air television programming on the defendant's television sets constitutes a public performance. Thus, the fourth element of copyright infringement may not be determined on a motion for summary judgment and, instead, must be resolved by the finder of fact.


IV.  Unauthorized Performance

17

To satisfy the fifth element of copyright infringement a plaintiff must demonstrate that the defendant lacked authority to perform publicly the musical compositions at issue on the date of the alleged infringement. Sailor Music, 640 F. Supp. at 632. Authorization to perform publicly a musical composition may be granted contractually through a license agreement. See Chi-Boy Music, 779 F. Supp. at 529 (ASCAP licensed public performance of copyrighted music); Broadcast Music, Inc. v. Pine Belt Inv. Developers, Inc., 657 F. Supp. 1016, 1019 (S.D. Miss. 1987) ("BMI licenses the performance of such copyrighted musical compositions . . . primarily by means of a blanket license agreement"); Sailor Music, 640 F. Supp. at 631-32 (defendant sought license agreement to perform live music at restaurant).

In the present case, BMI submits the affidavit of its employee, Lawrence Stevens, as evidence that the defendant was not authorized to perform the musical compositions on the dates at issue. Plaintiffs' Memorandum for Summary Judgment at 6. In his affidavit, Stevens testifies that on April 26, 1991, September 13, 1991, December 2, 1991, June 29, 1992, and November 30, 1992, BMI had offered the defendant a license to perform BMI-licensed musical compositions. Stevens Affidavit at 2. Stevens further testifies that the defendant did not respond to the license offers and that on December 1, 1992, and on June 8, 1993,

18

BMI mailed the defendant a letter demanding that it cease use of BMI-licensed music.  Id.

The defendant has not adduced evidence to challenge the veracity of the Stevens Affidavit and, indeed, has not even briefed the authorization element of copyright infringement. Rather, the defendant states that it "opted not to enter into a license agreement with BMI because, unlike many other establishments, Rockingham Park does not play music throughout its facility."  Defendant's Memorandum in Opposition at 3-4; Defendant's Memorandum for Summary Judgment at 3-4.

The court finds that at all relevant times the defendant lacked the authorization to perform publicly BMI music and, as such, the fifth element of copyright infringement is established as a matter of law.


V.  Homestyle Exemption

The defendant contends that even if the plaintiffs establish each element of copyright infringement, it is not liable by operation of the "homestyle exemption" of the Copyright Act. Defendant's Memorandum in Opposition at 11-13; Defendant's Memorandum for Summary Judgment at 11-13.  The plaintiffs counter that the defendant does not qualify for protection under the

19

"homestyle exemption."  Plaintiffs' Memorandum in Opposition at 5-6.

When a _prima_ _facie_ case of copyright infringement has been established, a defendant may still avoid liability under the "homestyle exemption" of 17 U.S.C.A. § 110(5).  Claire's Boutiques, 949 F.2d at 1486-87.  The exemption provides that there is no infringement of a copyright where there is

> a communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless --
> (A)  a direct charge is made to see or hear the transmission; or
> (B)  the transmission thus received is further transmitted to the public[.]

17 U.S.C.A. § 110(5).  The purpose of the exemption

> is to exempt from copyright liability anyone who merely turns on, in a public place, an ordinary radio or television receiving apparatus of a kind commonly sold to members of the public for private use.
> The basic rationale of this clause is that the secondary use of the transmission by turning on an ordinary receiver in public is so remote and minimal that no further liability should be imposed.

Claire's Boutiques, 949 F.2d at 1488 (citing H.R. Rep. No. 94-1733, 94th Cong., 2d Sess. 75 (1976), reprinted in 1976 U.S.C.C.A.N. 5810, 5816).

To successfully invoke the exemption, an otherwise liable defendant must demonstrate: (1) the use of a single receiving apparatus; (2) use of that apparatus is of a kind commonly used

20

in a private home; (3) that the transmission is provided free of charge; and (4) that the transmission is not "further transmitted" to the public."  Id. at 1489.

The defendant argues that the "homestyle exemption" applies because each television set is of a type commonly used at home by its patrons.  Defendant's Memorandum in Opposition at 12-13; Defendant's Memorandum for Summary Judgment at 12-13.  Moreover, each television set is under the control of the customer occupying the booth or table and, thus, the defendant does not assert control over the television set.  Id.  Finally, the defendant argues that it does not charge a fee for the use of the television and each television set is only for the use of the patrons sitting at the table or booth where the television is located.  Id.

The plaintiffs argue that the "homestyle exemption" is inapplicable because there are "several hundred 13" television sets on the premises" of Rockingham Park and not just a "single receiving apparatus."  Plaintiff's Memorandum in Opposition at 5.

Given the court's ruling, supra, that this case may not be resolved on a motion for summary judgment, the court leaves to another time the determination as to whether the "homestyle exemption" would apply if the plaintiffs are ultimately able to

satisfy each element of their <u>prima</u> <u>facie</u> copyright infringement claim.

Conclusion

The plaintiffs have established the copyright infringement elements of originality and authorship, compliance with copyright formalities, proprietorship of musical compositions, and that the defendant lacked authorization to perform BMI-licensed music. Thus, copyright infringement elements one, two, three, and five are satisfied as a matter of law.  However, the court finds that a genuine issue of material fact exists as to the fourth element, namely whether the musical compositions at issue were performed publicly.  Therefore, the court grants in part and denies in part the plaintiffs' motion for summary judgment (document no. 11) and denies the defendant's motion for summary judgment (document no. 15).

Counsel and the parties are ordered to engage in good faith efforts to resolve this case by agreement.  A joint status report concerning those efforts shall be filed by July 1, 1995.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

May 26, 1995
cc:  Andrew D. Dunn, Esquire
     Teresa C. Tucker, Esquire