TANYA CREATIONS, INC., Plaintiff,

v.

The TALBOTS, INC., Erwin Pearl, Inc., and F.O., Inc., Defendants.

C.A. No. 03–15L.

United States District Court, D. Rhode Island.

Feb. 17, 2005.

Craig M. Scott, Esq., Rachelle R. Green, Ralph N. Gaboury, Duffy Sweeney & Scott, Ltd., Providence, RI, for plaintiff.

Christopher R. Bush, Attorney General's Office, Steven E. Snow, Esq., Partridge, Snow & Hahn LLP, Providence, RI, for defendants.

## DECISION AND ORDER

LAGUEUX, Senior District Judge.

This matter comes before the Court on the motion of Plaintiff Tanya Creations, Inc.("Plaintiff") for summary judgment. However, in reality it is a motion for partial summary judgment on the issue of liability. Plaintiff seeks a determination that Defendants The Talbots, Inc. ("Talbots"), Erwin Pearl, Inc. ("EPI"), and F.O., Inc. ("FOI"), (collectively "Defendants")are guilty of copyright infringement.[1] For the reasons explained herein, this Court concludes that issues of material fact exist as to copyright infringement and, therefore, Plaintiff's motion for summary judgment must be denied.

## STANDARD OF REVIEW

When considering a motion for summary judgment, this Court must consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," Fed. R. Civ. Pro. 56(c), and view the facts presented therein in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). Indeed, to win summary judgment, the moving party must show that "there is an absence of evidence to support" the nonmoving party's claim. *Doyle v. Huntress, Inc.*, 301 F.Supp.2d 135, 141 (D.R.I.2004)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986)). In response, the nonmoving party cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim at issue. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988).

At the summary judgment stage, there is "no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Doyle* 301 F.Supp.2d at 141 (quoting *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987)). Therefore, when hearing a motion for summary judgment, it is the responsibility of the trial judge to determine whether a reasonable trier of fact could find for the nonmoving party based on the admissible evidence, and to refrain from invading the province of the jury by weighing the evidence or making credibility determinations. *Id., Mahan v. Boston Water & Sewer Comm'n.*, 179 F.R.D. 49, 56 (D.Mass.1998). Here, because Plaintiff

---

1. Plaintiff has voluntarily dismissed any remaining Lanham Act and common law unfair competition claims against Defendants, leaving only the instant copyright infringement claim for disposition by this Court.

has moved for summary judgment, this writer will view the following background information and factual allegations in the light most favorable to Defendants.

## BACKGROUND

### I. The Allegations

In January of 1999, Plaintiff's employee, Margaret Lynne Hawkins ("Hawkins") designed and created a jewelry brooch (the "Tanya Pin") with a Christmas tree-like appearance. The brooch incorporated an allegedly unique gold and silver swirl design. Hawkins apparently created the Tanya Pin specifically for Talbots as a potential part of its 1999 holiday jewelry collection. As described by Plaintiff, and undisputed by Defendants, "the Tanya Pin is a two-tone gold and silver pin in the configuration of a Christmas tree. The Tanya Pin is embodied by a fanciful colored swirl, which begins from the left tip of the pin, and incorporates six uniform swirls before ending in a small circular swirl at the bottom left of the pin, with additional gold colored accents on each undulation of the silver swirl. A silver star sits atop the rendering of the Christmas tree."

In the Spring of 1999, Plaintiff presented its pin and other jewelry designs to Carol Rees, a buyer for Talbots. Upon conclusion of the presentation, Barbara Kraselski, one of Plaintiff's sales people left several samples of the Tanya Pin and other pieces with Talbots for further consideration. Talbots subsequently chose not to purchase the Tanya Pin from Plaintiff.

In November 2002, Talbots began offering a Christmas tree-like pin (the "Accused Work") for sale in its retail stores and through its catalogues and web site. On December 4, 2002, Plaintiff obtained Copyright registration No. VA–1–154–960 for the Tanya Pin. Shortly thereafter, Plaintiff filed the instant lawsuit.

In its complaint and in subsequent pleadings, Plaintiff alleges that the Accused Work was identical to the Tanya Pin, except that it was marginally smaller in size. According to Plaintiff, the only apparent difference between the Tanya Pin and the Accused Work is that the Tanya Pin is approximately 1 7/8 inches long, while the Accused Work is 1 3/4 inches long. Plaintiff further alleges that Talbots purchased the Accused Work from EPI and that EPI imported the Accused Work through FOI. Plaintiff adds that FOI did not investigate, and had no knowledge of the origin of the Accused Work before offering it to EPI. None of Defendants purchased the Accused Work from Plaintiff.

According to Plaintiff, none of Defendants claim to have designed the Accused Work. Rather, FOI imported the Accused Work from a South Korean exporter known as Pave Co., Ltd ("Pave") without confirming Pave's ownership rights in the design of the Accused Work. Indeed, Plaintiff alleges, it was only after this lawsuit commenced that FOI inquired about the creator of the Accused Work; the origin of the Accused work; whether Pave sold the Accused Work; whether Pave sold the Accused Work to any party other than FOI; and whether Pave had done business with Plaintiff. Pave's reply was that it did not design the Accused Work and did not know who in fact had designed the Accused Work. Pave could only speculate that a casting factory in South Korea manufactured and supplied the Accused Work to Pave.

### I. Defendants' Response

While Plaintiff argues that its allegations are largely undisputed and that this case is in fact ripe for summary judgment, Defendants tell an entirely different tale. Indeed, in an initial salvo, Defendants dis-

pute the very fact that the Tanya Pin itself was an original design when presented to Talbots in 1999. Instead, Defendants point to Hawkins' deposition, noting that she admits that in designing the Tanya Pin, she referred to other Christmas tree pin designs, images that she collected, and other media such as greeting cards, gift wrap material and other printed materials. Accordingly, argue Defendants, several elements of the Tanya Pin, including the swirl ribbon design, the star on top, the trunk of the tree as the base, and the two-tone design, were not original to the Tanya Pin; but were elements that had been used in other swirl Christmas tree designs predating the Tanya Pin.

Defendants also claim that as early as 1992, Marilyn Caplin, Vice President of Product Development for FOI, asked designer Diane Gordon to sketch a design of a swirl Christmas tree pin based on a design that had appeared on a napkin. Gordon's design, in variations of single-tone gold, two-tone gold and silver and a similar design with insert stones became part of FOI's 1992 product line. Plaintiff's designer, Hawkins, admits in deposition testimony that she was familiar with FOI's 1992 Christmas tree pin designs.

Defendants next dispute the allegation that Talbots copied the Tanya Pin. In fact, Talbots representatives deny any recollection of seeing the Tanya Pin in 1999, and also state that to their knowledge they never had a specimen of the Tanya Pin in their possession. Moreover, representatives of FOI and EPI state in deposition testimony, that they, along with the exporter, Pave, had no access to the Tanya Pin between 1999 and 2002 when the Accused work was offered for sale by Talbots.

Turning to the works themselves, Defendants point to the deposition of Carol Rees, an employee of Talbots, who compares samples of both the Tanya Pin and the Accused work in deposition testimony. Rees points out multiple differences between the two works, including size, color tone, construction technique, texture, and weight. Defendants, therefore, dispute even the existence of substantial similarity between the pieces.

Lastly, Defendants question the validity of Plaintiff's copyright registration of the Tanya Pin. Defendants allege that despite evidence that Hawkins, the designer of the Tanya Pin, incorporated several elements of preexisting Christmas tree pins into the Tanya Pin, Plaintiff did not provide such information to the United States Copyright Office in its Certificate of Registration. Such failure to disclose, Defendants allege, raises a genuine issue of material fact as to whether there is sufficient originality in the Tanya Pin as to be an appropriate subject matter for copyright protection.

## DISCUSSION

■ As the First circuit has noted in a seminal case regarding copyright infringement, Plaintiff must show (1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer. *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 605 (1st Cir.1988), *Costello, Erdlen & Co. v. Winslow, King, Richards & Co.*, 797 F.Supp. 1054 (D.Mass.1992). To prevail at the summary judgment stage on an infringement claim, a plaintiff must show that no reasonable trier of fact could find other than that these elements have been met. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir.1994).

### (1) *Ownership of a Valid Copyright*

■ Plaintiff's ownership of the copyright can be further divided into five component parts: (1) originality in the author; (2) copyrightability of the subject matter;

(3) a national point of attachment of the work, such as to permit a claim of copyright; (4) compliance with applicable statutory formalities; and (5) (if the plaintiff is not the author) a transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff the valid copyright claimant. Melville B. Nimmer & David Nimmer, 4–13 Nimmer on Copyright § 13.01, *et seq.* (2004) (hereinafter "Nimmer") (citations omitted).

■ As to many of the above cited elements, the certificate of a registration of the work constitutes *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate pursuant to the Copyright Act. Nimmer, 17 U.S.C. § 410(c)(2004). Once the plaintiff has established its ownership *prima facie,* the burden then shifts to the defendant to counter this evidence. *Broadcast Music v. Rockingham Venture,* 909 F.Supp. 38, 43 (D.N.H.1995)(quoting *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985) (citations omitted)). A plaintiff may satisfy the elements of originality and authorship and compliance with copyright formalities by producing a certificate of copyright registration, which is prima facie evidence of the ownership and validity of the copyright. *Id.* (citing 17 U.S.C. § 410(c)(2004)).

As noted, Hawkins, an employee of Plaintiff, created the Tanya Pin in early 1999. On or about April 23, 1999, Plaintiff first publicized the Tanya Pin. In late 2002, Plaintiff applied for and obtained a copyright registration which became effective December 4, 2002. Therefore, Plaintiff argues—and this Court agrees—because Plaintiff registered its copyright in the Tanya Pin within five years after the date on which it first publicized the Pin, Plaintiff's Copyright Registration is prima facie evidence of the validity of its copyright in the Tanya Pin. *Id.*

The question of the validity of the copyright in the Tanya Pin does not end here however. Rather, Defendants have challenged the validity of Plaintiff's copyright, arguing that the issue of originality of the Tanya Pin itself could be sufficient to rebut Plaintiff's prima facie evidence of validity. Defendants point to Hawkin's admission that she was influenced by earlier works, asseverating that such admission does in fact call into question the originality of the Tanya Pin and such doubts are enough to overcome Plaintiff's presumptively valid copyright.

This Court disagrees. Indeed, in light of overwhelming case law, and the facts as they are alleged, this Court concludes that the Tanya Pin exceeds the minimal level of originality necessary for copyright protection, at least as it pertains to the validity of the copyright registration itself. 17 U.S.C. § 102(a)(5); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)(noting that "... originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying ..."). Therefore, this Court is satisfied that Plaintiff, by complying with the copyright registration requirements pursuant to the Copyright Act, and in keeping with the law has established ownership of a valid copyright.

(2) *Copying of the Protected Work by the Alleged Infringer*

■ Under *Concrete Machinery,* the second element that Plaintiff must demonstrate is copying. *Concrete Machinery,* 843 F.2d at 605. However, in the vast majority of copyright cases proof by direct evidence of copying is generally not possible since the actual act of copying is rarely witnessed or recorded. Normally, there is no physical proof of copying other than the offending object itself. Copying therefore

is generally established by showing that the defendant (1)had access to the copyrighted work; and (2) that the offending copyrighted article is "substantially similar." *Id.* at 606. This case is no different.

■ As to access, this Court agrees that Defendants have indeed raised genuine issues of material fact. Although Plaintiff asserts that Talbots had access to the Tanya Pin in 1999 because it allegedly provided samples to Talbots as part of a presentation of a holiday jewelry assortment, Defendants have provided evidence to the contrary. As noted above, representatives of Talbots have stated in deposition testimony that they have no recollection of seeing the Tanya Pin in 1999 and further state that they never had and do not currently have a specimen of the Tanya Pin in their possession, custody or control. Regardless of where the truth may lie, it is readily apparent that Defendants have provided sufficient evidence to show that indeed a genuine dispute of material fact as to access exists in this case.

Moreover, even if it were true that Talbots had access to the Tanya Pin in 1999, Plaintiff has offered no evidence to show a nexus between the Tanya Pin it allegedly provided to Talbots in 1999 and the creation of the Accused Work in 2002. Plaintiff has presented no evidence that Pave, FOI or EPI had access to the Tanya Pin between 1999 and 2002 when the Accused Work was offered for sale by Talbots. To the contrary, in deposition testimony representatives of EPI and FOI deny knowledge of ever receiving any jewelry samples from Talbots. Lastly, there is no evidence that Talbots provided the Tanya Pin to EPI, FOI or Pave. This Court is therefore satisfied that Defendants have raised genuine issues of material fact as to the "access" prong of copying.

■ Plaintiff must next demonstrate that the infringing material is substantially similar to its own protected material. *Yankee Candle Co. v. Bridgewater Candle Co., LLC,* 99 F.Supp.2d 140, 147 (D.Mass. 2000), aff'd 259 F.3d 25 (1st Cir.2001). In this Circuit, whether substantial similarity exists between copyrighted material and infringing material is determined by applying the "ordinary observer test." The test asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Id.* (quoting *Concrete Machinery,* 843 F.2d at 607).

As many courts have noted, while summary judgment can be appropriate in a copyright suit, the motion must be denied when the question of "substantial similarity is one on which reasonable minds can differ." *See e.g. Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992). Courts in this Circuit have gone so far as to state that "because substantial similarity is customarily an extremely close question of fact summary judgment has traditionally been frowned upon in copyright litigation." *Yankee Candle Co.,* 99 F.Supp.2d at 146 (quoting *Costello, Erdlen & Co., Inc. v. Winslow, King, Richards & Co.,* 797 F.Supp. 1054, 1063 n. 17 (D.Mass.1992).

In this case, this Court is satisfied that Defendants have provided evidence sufficient to show that reasonable minds could differ on the question of substantial similarity. In deposition testimony, Talbots' representative Rees was able to point to a variety of differences between the Tanya Pin and the Accused Work. In her testimony she pointed to differences in size, construction technique, and texture, *inter alia;* sufficient differences, to create a "close question of fact" as to substantial similarity. Therefore, this Court concludes that Defendants have raised genu-

ine issues of material fact as to the "substantial similarity" prong of copying.

## CONCLUSION

In light of the above, this Court concludes that because Defendants have raised genuine issues of material fact as to copyright infringement, Plaintiff is not entitled to summary judgment on that issue. Consequently, Plaintiff's motion for summary judgment is denied.

It is so ordered.